Ralph JICHA, Petitioner-Respondent,†

v.

STATE of Wisconsin, Department of Industry, Labor and Human Relations, Equal Rights Division, Respondents-Co-Appellants,

FORT HOWARD CORPORATION, Respondent-Appellant.

Court of Appeals

*No. 91-0238. Submitted on briefs June 28, 1991.—Decided July 23, 1991.*

(Also reported in 473 N.W.2d 578.)

†Petition to review granted.

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Thomas E. Obenberger* and *Scott C. Beightol, Michael, Best & Friedrich,* of Milwaukee.

On behalf of the respondents-co-appellants, the cause was submitted on the briefs of *James E. Doyle,* attorney general, and *Richard Briles Moriarty,* assistant attorney general.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Lise Lotte Gammeltoft, Zuidmulder, Appel & Gammeltoft, S.C.,* of Green Bay.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.   The Department of Industry, Labor and Human Relations and Fort Howard Corporation appeal a judgment reversing an administrative law judge's (ALJ) determination that Ralph Jicha did not file his complaint alleging a violation of the Wisconsin Family and Medical Leave Act (FMLA) within the statutory thirty-day period. The trial court ruled that because there was a disputed issue of fact as to when Fort Howard learned of Jicha's claimed serious health condition, the ALJ erred by concluding that the complaint was not timely. Because substantial evidence supports the ALJ's determination that Fort Howard had notice of Jicha's health condition when it terminated him and because Jicha did not file a complaint within thirty days of that alleged violation, we reverse the trial court's judgment.

Jicha began his employment with Fort Howard in September 1980. On October 18, 1988, Jicha was

arrested and confined to the Brown County Jail due to a complaint his wife, Diane Jicha, made after a family dispute. Jicha remained in jail, and on October 24, Diane filed a petition with the Brown County Circuit Court requesting Jicha's involuntary commitment based upon an allegation of mental illness. A detention order was filed pursuant to the petition and a hearing was scheduled for October 25. Jicha was then transferred to Brown County Mental Health Center for examination. The hearing was rescheduled, but on November 1 the petition was dismissed, and Jicha was released.

On October 18, the day of his arrest, Jicha called Fort Howard and requested personal time off without disclosing that he had been incarcerated. The next day he called Fort Howard and stated that he would be late for work, apparently hoping to be released soon on bail. On October 20, Jicha's brother telephoned Fort Howard and again reported Jicha's absence.

On Friday, October 21, Jicha's attorney contacted appropriate Fort Howard personnel on three separate occasions. He first informed them of the criminal case. Next, he called to inform them that Diane was expected to file a petition that day for involuntary commitment based on an alleged mental illness. He called a third time to tell them that the petition would be filed Monday. During the second or third conversation, the attorney disclosed that Jicha would be temporarily placed at the mental health center but that he did not believe Jicha would be committed.[1]

In a letter dated October 24, Fort Howard terminated Jicha for excessive absenteeism. Diane delivered

[1]The parties do not raise the issue of whether Jicha's alleged mental illness is a serious health condition under FMLA. We therefore assume, as did the parties, that FMLA covered Jicha's situation.

the letter to Jicha three days later. A second letter was sent on October 25 advising Jicha that he had been terminated as of October 24 and informing him of the consequences that this termination would have on various benefits available to him.

Fort Howard has the following written policy regarding employee dismissals:

> In the event of dismissal, the employee may request an interview with the President of the Company for the purpose of reviewing the case. Whether the employee requests it or not, the case is automatically reviewed by the President. After the discharge is effective, the employe's complete personnel file, along with a clear explanation of the facts and the reason for the discharge, is submitted to the President of the Company. If the President feels that discharge was too severe, the employe is reinstated with full seniority and could receive back pay for the period of suspension from active employment. If the President agrees with the previous decision, the employee remains discharged.
>
> This Open Door Policy has resulted in the reinstatement of a number of employees.

Pursuant to this policy, Jicha requested a meeting with the president to review his termination. On November 9, 1988, Jicha presented the circumstances surrounding his termination to the president and requested reinstatement. On December 15, Jicha was advised that the president refused to reinstate him and that he remained terminated.

On January 13, 1989, Jicha filed a complaint with the department's Equal Rights Division alleging that Fort Howard violated FMLA by discharging him for

absences protected by FMLA.[2] The ALJ granted Fort Howard's motion to dismiss based on his conclusion that the alleged violation occurred as a result of the October 24 termination and that Jicha did not file his complaint within thirty days. The trial court disagreed. The court reasoned that Fort Howard could not violate the provisions of the FMLA unless it knew of Jicha's medical condition, and the court believed the record was unclear on that issue. The trial court remanded the case for a determination of when Fort Howard learned of Jicha's health condition.

The ALJ's factual findings will be upheld if supported by substantial evidence. Section 227.57(6), Stats. We review the ALJ's legal conclusions de novo. *MPI Wis. Mach. Div. v. DILHR,* 159 Wis. 2d 358, 366, 464 N.W.2d 79, 82 (Ct. App. 1990).

Section 103.10(12)(b), Stats., provides in relevant part:

> (b) An employe who believes his or her employer has violated sub. (11)(a) or (b) may, within 30 days after the violation occurs or the employe should reasonably have known that the violation occurred, whichever is later, file a complaint with the department alleging the violation.

Jicha contends the thirty-day statute of limitations began to run on December 15, 1988, the day he received the letter refusing reinstatement.

---

[2]Section 103.10(4)(a), Stats., provides: "[A]n employee who has a serious health condition which makes the employee unable to perform his or her employment duties may take medical leave for the period during which he or she is unable to perform those duties."

Jicha first argues that Fort Howard's October 24 termination letter did not violate FMLA because Fort Howard did not have notice of his medical condition at that time. We reject this argument. The ALJ found that "Jicha's attorney called Fort Howard and explained the circumstances surrounding Jicha's confinement in the Brown County Mental Health Facility." While Jicha had not yet been transferred to the mental health facility when Jicha's attorney spoke with Fort Howard, he advised Fort Howard that Diane was filing a petition for commitment, that there would be a hearing on the petition and that Jicha would have to undergo an evaluation for mental illness. Substantial evidence thus supports the ALJ's factual finding that Jicha's attorney explained Jicha's alleged mental health condition to Fort Howard.

Jicha contends that Fort Howard did not know the details of his situation until after it sent the termination letter. Jicha thus argues that it was not until Fort Howard refused to reinstate him that it violated the Act. This case presents an unusual fact situation in that the employee, rather than the employer, argues that the employee must give the employer detailed information concerning his medical condition. FMLA, however, does not require that the employee utter magic words or make a formal application to invoke FMLA's protections. In this case, the telephone conversations between Jicha's attorney and Fort Howard gave sufficient notice to bring Jicha under FMLA's fold. Because Fort Howard was informed of Jicha's situation in a manner giving a reasonable employer notice of a serious health condition, the alleged violation occurred when Jicha received his termination letter on October 27, 1988. Therefore, the

thirty-day statute of limitations began to run on that date.

Jicha next argues that it was reasonable for him to believe that the statute of limitations began to run on December 14, 1988, the day he received the letter denying his reinstatement. The thirty-day limitation begins to run when the violation occurs or "the employee reasonably should have known that the violation occurred, whichever is later." Section 103.10(12)(b), Stats. Jicha argues that he reasonably believed he would be reinstated pursuant to the Open Door Policy and that he was aware of cases in which persons had been reinstated.

The question, however, concerns when Jicha reasonably knew of a violation, not whether he reasonably thought he would be reinstated. The violation occurred upon termination without regard to whether he was reinstated. The availability of the Open Door Policy procedure does not alter the fact that Jicha was discharged. The policy allows for presidential review "*after the discharge is effective.*" The president may *reinstate* the employee if he believes the *discharge* was too severe. However, if the president agrees with the discharge decision, "the employee *remains discharged.*" While the policy refers once to "the period of suspension," when read as a whole, the policy is intended as a post-termination procedure that occurs after the discharge is effective. Because Jicha knew of his termination on October 27, the thirty-day period began to run on that date.

This analysis squares with the Supreme Court's treatment of the statute of limitations in employment discrimination cases under Title VII of the Civil Rights Act. *See Delaware State College v. Ricks,* 449 U.S. 250 (1980). In that case, the Court held that the availability of a grievance procedure did not affect the finality of the

termination decision or toll the running of the limitations period. *Id.* at 261. The Court stated that the grievance procedure "is a remedy for a prior decision, not an opportunity to influence that decision before it is made." *Id.* Similarly, the informal policy in this case was a remedy that the discharged employee could pursue, rather than the final step in the decision to terminate the employee.

Because Fort Howard had reasonable notice that Jicha suffered a serious medical condition necessitating his absence from work and elected to terminate Jicha with this information, the trial court erred by concluding that substantial evidence was not available to support the ALJ's determination that Fort Howard was adequately informed of Jicha's alleged mental health condition. The alleged violation of the Act occurred when Jicha received Fort Howard's October 24 letter terminating him. Jicha therefore had thirty days from the date of receipt of that communication to file his complaint. There is no dispute that his complaint was not filed until several months after his termination.

*By the Court.*—Judgment reversed.