Ralph JICHA, Petitioner-Respondent-Petitioner,

v.

State of Wisconsin DEPARTMENT OF INDUSTRY, LABOR & HUMAN RIGHTS DIVISION, Respondents-Co-Appellants,

FORT HOWARD CORPORATION, Respondent-Appellant.

Supreme Court

*No. 91–0238. Oral argument May 28, 1992.—Decided June 23, 1992.*

(Also reported in 485 N.W. 256.)

For the petitioner-respondent-petitioner there were briefs by *Lise Lotte Gammeltoft* and *Zuidmulder, Appel & Gammeltoft, S.C.,* Green Bay, and oral argument by *Lise Lotte Gammeltoft.*

For the respondent-appellant there was a brief by *Thomas E. Obenberger, Scott C. Beightol* and *Michael, Best & Friedrich,* Milwaukee and oral argument by *Mr. Obenberger.*

For the respondent-co-appellant the cause was argued by *Richard Briles Moriarty,* assistant attorney general, with whom on the brief was *James E. Doyle,* attorney general.

WILLIAM A. BABLITCH, J. Ralph Jicha (Jicha) seeks review of a published court of appeals' decision. *Jicha v. State,* 164 Wis. 2d 94, 473 N.W.2d 578 (Ct. App. 1991). He argues that he filed his complaint against Fort Howard Corporation (Fort Howard) alleging a violation of the Wisconsin Family Medical Leave Act (FMLA) within the 30-day statute of limitation. The court of appeals held that since substantial evidence supported the hearing examiner's determination that Fort Howard had sufficient notice of Jicha's health condition when it terminated him, the 30-day period began running from the date Jicha received his termination letter even though the termination decision was then being reviewed by the company president. We agree. Accordingly, the judgment of the court of appeals is affirmed.

The relevant facts follow. In 1980, Jicha began his employment with Fort Howard as a machine operator. On October 18, 1988, Jicha was arrested and confined to the Brown County jail due to a complaint filed by his wife. Jicha was incarcerated in the Brown County jail from Tuesday, October 18, 1988, until Monday, October 24, 1988. On the first day of his incarceration, October 18, Jicha called Fort Howard and requested personal time off. He did not disclose that he was incarcerated. The following day, October 19, Jicha again called Fort Howard and stated that he would be late for work, apparently hoping that he would be released on bail. On October 20, Jicha's brother called Fort Howard and reported Jicha's absence.

On Friday, October 21, 1988, Jicha's attorney called and spoke with Fort Howard on three separate occasions. First, the attorney informed Fort Howard of the criminal complaint filed against Jicha. Next, he called to inform Fort Howard that Jicha's wife was expected to file a complaint that day seeking Jicha's involuntary commitment based upon alleged mental illness. During the third phone call, the attorney told Fort Howard that the petition would be filed on October 24, 1988, that Jicha would be placed temporarily at the mental health center, and that he believed Jicha would not be committed.

On October 24, 1988, Jicha's wife filed a petition with the Brown County Circuit Court requesting Jicha's involuntary commitment, and sometime that day Jicha was transferred from the jail to the Brown County Mental Health Center for examination. A detention order was filed pursuant to the petition, and a hearing was scheduled for October 25. The hearing was rescheduled, and on November 1, 1988, the petition was dismissed, and Jicha was released.

In a letter dated October 24, 1988, Fort Howard terminated Jicha for excessive absenteeism.[1] Jicha received the termination letter from his wife on October 27, 1988. A second letter was sent on October 25, 1988, advising Jicha that his employment had been terminated effective October 24, 1988, and informing him of the consequences the termination of employment would have on various benefits available to him.

On November 2, 1988, Jicha met with Fort Howard officials and requested that the company's president

---

[1] Pursuant to Fort Howard's No Fault Absence Control Policy, an employee will be terminated for 13 or more unexcused absences in a year. Jicha does not dispute that his absence on October 24, 1988, was his thirteenth in a year.

review his termination pursuant to Fort Howard's Open Door Policy. Fort Howard's policy provides:

> In the event of dismissal, the employee may request an interview with the President of the Company for the purpose of reviewing the case. Whether the employee requests it or not, the case is automatically reviewed by the President. After the discharge is effective, the employee's complete personnel file, along with a clear explanation of the facts and the reason for the discharge, is submitted to the President of the Company. If the President feels that discharge was too severe, the employee is reinstated with full seniority and could receive back pay for the period of suspension from active employment. If the President agrees with the previous decision, the employee remains discharged.

> This Open Door Policy has resulted in the reinstatement of a number of employees.

On November 9, 1988, Jicha presented the circumstances surrounding his termination to the president and requested reinstatement. On December 15, 1988, Jicha was informed that the president refused to reinstate him.

On January 13, 1989, Jicha filed a complaint with the Department of Industry, Labor and Human Relations Equal Rights Division (DILHR), alleging that Fort Howard violated the FMLA by discharging him for absences protected under the act.[2] The Equal Rights Division investigated the claim and dismissed it upon a

---

[2]The Wisconsin Family and Medical Leave Act provides various types of job protected leave for Wisconsin workers. The portions of the act relevant to Jicha's claim provide:

> an employe who has a serious health condition which makes the employe unable to perform his or her employment duties may take medical leave for the period during which he or she is unable to perform those duties. Section 103.10(4)(a), Stats.

finding of no probable cause to believe the FMLA was violated. Jicha appealed the dismissal, and on March 27, 1990, a hearing was held before a DILHR hearing examiner. The hearing examiner granted Fort Howard's motion to dismiss concluding that the alleged violation occurred as a result of the October 24, 1988 termination, and that Jicha had not filed his complaint within 30 days.[3] The circuit court reversed reasoning that in order for an employer to violate the FMLA, the employer must be aware of the employee's medical condition, and since the record was unclear on that issue, dismissal was inappropriate. Fort Howard and DILHR appealed to the court of appeals, and the court of appeals reversed. We granted Jicha's petition for review.

We begin with a discussion of the appropriate standard of review. A hearing examiner's factual findings will be upheld if supported by substantial evidence. Section 227.57(6), Stats. This court has generally applied three levels of deference to conclusions of law and statutory interpretation in agency decisions. *Sauk County v. WERC*, 165 Wis. 2d 406, 477 N.W.2d 267 (1991). First, if

---

Section 103.10(1)(g), Stats., defines serious health condition as:

> a disabling physical or mental illness, injury, impairment or condition involving any of the following:
> 1. Inpatient care in a hospital, . . ..
> 2. Outpatient care that requires continuing treatment or supervision by a health care provider.

[3]Section 103.10(12)(b), the portion of the FMLA which pertains to the limitations for filing a complaint, provides:

> An employe who believes his or her employer has violated sub. (11)(a) or (b) [of the act] may, within 30 days after the violation occurs or the employe should reasonably have known that the violation occurred, whichever is later, file a complaint with the department alleging the violation.

the administrative agency's experience, technical competence, and specialized knowledge aid the agency in its interpretation and application of the statute, the agency determination is entitled to "great weight." *Id.* at 413. The second level of review provides that if the agency decision is "very nearly" one of first impression it is entitled to "due weight" or "great bearing." *Id.* at 413-414. The lowest level of review, the *de novo* standard, is applied where it is clear from the lack of agency precedent that the case is one of first impression for the agency and the agency lacks special expertise or experience in determining the question presented. *Id.*

The parties disagree as to the appropriate deference to be given to the hearing examiner's conclusions of law in this case. Jicha argues that none of the above mentioned standards govern this case as they are standards governing agency determinations. Citing *MPI Wi. Machining Div. v. DILHR,* 159 Wis. 2d 358, 464 N.W.2d 79 (Ct. App. 1990), he maintains that since the FMLA allows direct appeal of an examiner's decision and order to the circuit court, with no intervening review by the commission, the decision is not that of an *agency* but rather a decision of a single hearing examiner. As such, the decision is entitled to no more deference than that given to a single circuit judge and should therefore be reviewed *de novo.* We disagree.

As Jicha suggests, sec. 103.10(13), Stats., provides for direct circuit court review after the completion of the administrative proceeding, and unlike the Fair Employment Act there is no provision providing for intervening review by the commission. However, sec. 103.10(12)(b) and Wis. Adm. Code Sec. Ind 86.21(3) explicitly provide that decisions resulting from an administrative proceeding concerning the FMLA are those of DILHR rather

than of a single hearing examiner. Wisconsin Adm. Code Sec. Ind 86.21(3) provides: "[t]he decision of the administrative law judge [hearing examiner][4] shall be the final decision of the division and the department for purposes of judicial review . . . ." Therefore, contrary to the court of appeals' decision in *MPI* and Jicha's assertions before this court, administrative decisions concerning the FMLA are those of the agency and as such are governed by the same rules concerning agency discretion discussed above. We now turn to the application of those rules to the case before us.

DILHR went through a rulemaking process and carefully considered the provisions of the FMLA and adopted administrative rules interpreting the statute. *See* Wis. Adm. Code Sec. Ind 86. Furthermore, as Fort Howard and DILHR point out, although the FMLA is a relatively new act, as it was adopted in 1988, the Equal Rights Division of DILHR has experience and expertise in administering and interpreting the provisions of a closely analogous statute, the Wisconsin Fair Employment Act (WFEA). They also correctly point out that, although the statutes of limitation provisions differ in some respects between the FMLA and the WFEA, the general principles regarding the interpretation of the statutes of limitation are similar. *See,* sec. 111.39(1), Stats. ("[t]he department may receive and investigate a complaint . . . if the complaint is filed with the department no more than 300 days after the alleged discrimination or unfair honesty testing occurred."). In sum, through its rulemaking process DILHR has gained experience and expertise concerning this statute. DILHR has

---

[4]A Wisconsin Statute refers to persons who preside over administrative proceedings as hearing examiners, not Administrative Law Judges. *See* sec. 111.39, Stats.

also developed considerable specialized knowledge in administering similar employment discrimination laws. The application of that knowledge and expertise is entitled to deference in this case. We conclude that DILHR's decision in this case is entitled to great weight and should be affirmed if reasonable. *See West Bend Education Ass'n v. WERC*, 121 Wis. 2d 1, 13–14, 357 N.W.2d 534 (1984).

We now turn to the primary issue before us: whether Jicha failed to timely file his complaint alleging a violation of the FMLA. The statute of limitations provision, sec. 103.10(12)(b), Stats., provides:

> An employe who believes his or her employer has violated sub. (11)(a) or (b) may, within 30 days after the violation occurs or the employe should reasonably have known that the violation occurred, whichever is later, file a complaint with the department alleging the violation.

Jicha sets forth two arguments to support his contention that the 30-day statute of limitations began to run on December 15, 1988, the day he received the letter refusing reinstatement. First, Jicha argues that Fort Howard's October 24 termination letter did not violate the FMLA because Fort Howard did not have sufficient notice of his medical condition at that time. Jicha posits that the violation did not occur until Fort Howard refused to reconsider its position after learning on Nov. 2, 1988, of the medical facts and circumstances surrounding Jicha's absence. We do not agree.

Generally, Wisconsin statutes of limitation employ language to the effect that a claim must be filed within a certain number of days or years after the cause of action accrues. *See, e.g.,* sec. 893.53, Stats. ("An action to

recover damages for an injury to the character . . . shall be commenced within 6 years after the cause of action accrues . . ."); sec. 133.18 ("[a] civil action for damages or recovery of payments under this chapter is barred unless commenced within 6 years after the cause of action accrued"); sec. 893.35 ("[a]n action to recover personal property shall be commenced within 6 years after the cause of action accrues . . ."); sec. 893.52 ("[a]n action, not arising on contract, to recover damages for an injury to real or personal property shall be commenced within 6 years after the cause of action accrues . . ."). Our case law indicates that " 'a cause of action accrues where there exists a claim capable of present enforcement, a suable party against whom it may be enforced, and a party who has a present right to enforce it' " *Employers Ins. of Wausau v. Smith,* 154 Wis. 2d 199, 231, 453 N.W.2d 856, (1990). *See also Meracle v. Children's Serv. Soc.,* 149 Wis. 2d 19, 26, 437 N.W.2d 532 (1989); *Hunter v. Sch. Dist. Gale-Ettrick-Trempealeau,* 97 Wis. 2d 435, 442, 293 N.W.2d 515 (1980). In other words, a cause of action has accrued when all of the elements necessary to bring a cause of action have occurred.

The statute at issue in this case provides that an employee must bring a claim "within 30 days after the violation occurs . . .." This language is another way of saying that a claim must be brought within 30 days after a violation accrues or a cause of action has accrued. Thus, the question in this case is whether sufficient information was given to Fort Howard before October 24, 1988, concerning the medical circumstances surrounding Jicha's absence, for a violation of the FMLA to have accrued. The hearing examiner found that "Jicha's attorney called Fort Howard and explained the circumstances surrounding Jicha's confinement in the Brown

294

County Mental Health Facility." As the court of appeals noted, substantial evidence supports this factual finding:

> While Jicha had not yet been transferred to the mental health facility when Jicha's attorney spoke with Fort Howard, he advised Fort Howard that Diane was filing a petition for commitment, that there would be a hearing on the petition and that Jicha would have to undergo an evaluation for mental illness. Substantial evidence thus supports the ALJ's [hearing examiner's] factual finding that Jicha's attorney explained Jicha's alleged mental health condition to Fort Howard. *Jicha v. State,* 164 Wis. 2d at 100.

We agree and conclude that the telephone conversations between Jicha's attorney and Fort Howard were sufficient notice of the medical circumstances surrounding Jicha's absence to give rise to the accrual of a cause of action for purposes of the statute of limitations. Therefore, the alleged violation occurred when Fort Howard terminated Jicha on October 24, 1988.

Jicha next argues that even if Fort Howard violated the FMLA on October 24, 1988, it was reasonable for him to believe that a violation did not occur until he received the denial of his reinstatement on December 15, 1988. Specifically, he contends that he reasonably believed he would be reinstated by Fort Howard's president pursuant to its Open Door Policy and that he was aware that the policy had been used to reinstate people in the past.

██

The statute of limitation states that the 30-day limitations period begins to run when the violation occurs or "the employee reasonably should have known that the violation occurred, whichever is later." Section 103.10(12)(b), Stats. Fort Howard's Open Door Policy

provides a post-termination procedure whereby an employee can seek *reinstatement.* Its existence did not change the fact that Jicha's employment was terminated on October 24, 1988, and it was not reasonable for Jicha to conclude otherwise. As the court of appeals reasoned:

> The question . . . [in this case] concerns when Jicha reasonably knew of a violation, not whether he reasonably thought he would be reinstated. The violation occurred upon termination without regard to whether he was reinstated. The availability of the Open Door Policy procedure does not alter the fact that Jicha was discharged. The policy allows for presidential review *'after the discharge is effective.'* The president may *reinstate* the employee if he believes the *discharge* was too severe. However, if the president agrees with the discharge decision, 'the employee *remains discharged.'* While the policy refers once to 'the period of suspension,' when read as a whole, the policy is intended as a post-termination procedure that occurs after the discharge is effective. *Jicha,* 164 Wis. 2d at 101 (emphasis in original).

We agree with this analysis. It was not reasonable for Jicha to conclude that Fort Howard's policy was anything other than an appeal process following a discharge. It also was not reasonable for him to believe that a violation of the FMLA did not occur until after the post-termination procedure. Jicha reasonably should have known that a violation occurred upon receipt of his termination letter on October 27, 1988.

Similarly, in the context of a Title VII employment discrimination case, the United States Supreme Court has held that a post-termination grievance procedure does not affect the finality of a termination decision or toll the running of the statute of limitation period. *See*

*Delaware State College v. Ricks,* 449 U.S. 250 (1980). In *Delaware,* the Court noted that "[t]he grievance procedure, by its nature, is a *remedy* for a prior decision, not an opportunity to *influence* that decision before it is made. . . . we already have held that the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods." *Delaware,* 449 U.S. at 261 (citation omitted). Like the grievance procedure in the *Delaware* case, Fort Howard's presidential review procedure is a post-termination procedure, rather than part of the termination decisionmaking process. The possibility that Jicha may have been reinstated pursuant to the policy did not change the fact that he was terminated. We conclude that the essential facts supportive of a claim under the FMLA reasonably should have been apparent to Jicha when he received his termination letter on October 27, 1988. Therefore, the 30 days began running as of October 27, 1988. It is undisputed that Jicha's complaint was filed several months after his receipt of the termination letter and thus was untimely. Accordingly, we affirm the judgment of the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.