Michael HORTON, Plaintiff-Respondent,†

v.

William HADDOW, Defendant,

WISCONSIN EXPRESS LINES, INC., Defendant-Appellant,

LIBERTY MUTUAL INSURANCE COMPANY, Defendant,

THRESHERMEN'S MUTUAL INSURANCE COMPANY, Defendant-Appellant,

Wisconsin LABOR & INDUSTRY REVIEW COMMISSION, Defendant.

Court of Appeals

*No. 93–0615. Submitted on briefs October 8, 1993.—Decided June 23, 1994.*

(Also reported in 519 N.W.2d 736.)

†Petition to review denied.

174

175

For the defendant-appellant, Wisconsin Express Lines, Inc. and Threshermen's Mutual Insurance Company, the cause was submitted on the brief of *Daniel J. Stangle* and *Joseph Berger* of *Otjen, Van Ert, Stangle, Lieb & Weir, S.C.* of Milwaukee.

For the plaintiff-respondent the cause was submitted on the brief of *Charles M. Soule* of *Schoone, Fortune & Leuck, S.C.* of Racine.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

GARTZKE, P.J. Wisconsin Express Lines, Inc. appeals from an order reversing the order of the Labor and Industry Review Commission (LIRC) which affirmed the administrative law judge's (ALJ's) dismissal of Michael Horton's application for worker's compensation for his out-of-state injury.[1] LIRC affirmed the dismissal of Horton's application for lack of jurisdiction under § 102.03(5), STATS. Horton agrees

---

[1] Horton applied for worker's compensation from both Wisconsin Express and William Haddow. LIRC limited its findings to whether, at the time of his injury, Horton was working under a contract of hire made in Wisconsin, and made no finding whether his employer was Wisconsin Express or Haddow. Both Wisconsin Express and Haddow timely sought judicial review and both appealed to the court of appeals, but we dismissed Haddow's appeal because his notice had not been timely filed. Our dismissing Haddow's appeal does not deprive this court of jurisdiction or Wisconsin Express of standing to continue its appeal. Were we to affirm the trial court's judgment, the matter would be remanded to the agency for a hearing on Horton's application and Wisconsin Express would be exposed to liability should it ultimately be found to be Horton's employer.

that his employment was not principally localized in any state, but he asserts, as the trial court held, that because he was working under a contract of hire made in this state, Wisconsin has jurisdiction. We affirm LIRC's contrary conclusion: because Horton's acceptance of the employment offer occurred in Mississippi, his contract was not made in Wisconsin, and this state has no jurisdiction over his application under § 102.03(5). We therefore reverse the trial court's order and remand with directions.

Section 102.03(5), STATS., provides in relevant part:

> If an employe, while working outside the territorial limits of this state, suffers an injury on account of which the employe . . . would have been entitled to the benefits provided by this chapter had such injury occurred within this state, such employe . . . shall be entitled to the benefits provided by this chapter, if at the time of such injury any of the following applies:
>
> (a)    His or her employment is principally localized in this state.
>
> (b)    *He or she is working under a contract of hire made in this state in employment not principally localized in any state.*
>
> (c)    He or she is working under a contract made in this state in employment principally localized in another state whose worker's compensation law is not applicable to that person's employer.
>
> (d)    He or she is working under a contract of hire made in this state for employment outside the United States.

(Emphasis added.)

Because Horton's injury occurred outside Wisconsin, and he agrees his employment was not principally localized in any state, Wisconsin has jurisdiction over his claim only if § 102.03(5)(b), STATS., applies.

The pertinent facts are, for the most part, undisputed. At the time of his injury in Gulfport, Mississippi, Horton was employed as an over-the-road truck driver stationed in Gulfport, where he lived. He hauled loads between Gulfport and the Midwest, driving a unit owned by William Haddow, who resided in Wisconsin Rapids, Wisconsin.

Haddow leased two of his units, including unit number 204 which Horton drove, to Wisconsin Express of Green Bay, Wisconsin. The lease required Haddow to provide a driver for the unit, and stipulated that Haddow shall select, furnish, train and supervise the driver and pay the driver's wages.

To obtain a driver for unit number 204, Wisconsin Express ran a newspaper advertisement in Gulfport in February 1988. The unit was in the South at the time. Horton saw the advertisement, called the listed telephone number and spoke to a person in the Green Bay office of Wisconsin Express. He requested and received an application form, completed it and mailed it back.

In March 1988, Haddow asked Wisconsin Express whether it had applications for drivers for unit number 204. Wisconsin Express gave him several completed applications, including Horton's. Haddow selected Horton's and telephoned him at his Gulfport home. During the conversation, Haddow told Horton he needed a driver for his truck and offered Horton the opportunity to drive it. After negotiating the pay and reaching an agreement at "twenty percent of the load," Horton accepted the offer.

Haddow testified that during the telephone conversation, he told Horton that "subject to him passing all the orientation exams he was hired." Haddow described orientations in Green Bay as consisting of "road testing, some paperwork, whatever the DOT [Wisconsin Department of Transportation] specifies."

Adopting the ALJ's findings as its own, LIRC found that before Horton was allowed to drive the truck, he had to provide Wisconsin Express with a medical examiner's certificate, successfully complete the required driver's road test in Gulfport and receive various documents. Horton received the required documents, and on April 1, 1988, he passed the road test in Gulfport.

On April 6, 1988, Horton began driving unit number 204. That day he was dispatched with a load from Gulfport to Cleveland, Ohio, and thence to Green Bay. When he arrived in Green Bay on April 11, 1988, he underwent an orientation program at the office of Wisconsin Express and successfully completed a written examination for drivers, as required by DOT.

During Horton's employment as a driver, the terms of his employment never changed. He always drove Haddow's unit number 204, and Haddow paid him twenty percent of the load (less expenses).

LIRC adopted the ALJ's finding that Horton was in Mississippi when he accepted the offer for employment made by Haddow. It found that Haddow paid Horton for the initial run, which began on April 6, 1988, from Gulfport to Cleveland and Green Bay. LIRC concluded that any orientation program in Green Bay on April 11, 1988, did not alter the terms of the contract of hire which Horton had already accepted in Mississippi. LIRC noted Horton's assertion that the evidence showed that he was conditionally hired to drive from

Mississippi to Wisconsin but that his passing the DOT certification examination was a "condition precedent" to the formation of his employment contract, and once he passed that examination in Green Bay, he was working under a contract of hire made in Wisconsin.

LIRC found that the evidence showed that while in Mississippi, Horton had completed his job application, had successfully negotiated the terms of his employment by telephone and had completed a road test and physical examination. It found that Haddow had indicated to Horton over the telephone that he was hired, and, as a result, Horton delivered a load for Haddow, leading to his arrival in Green Bay to take the DOT examination and undergo orientation. The terms and conditions of Horton's employment were not changed as a result of his orientation or the examination. LIRC found that the fact that the employer could have rejected Horton if he failed the examination in Wisconsin did not alter the fact that he was previously hired in Mississippi.

LIRC further found that although Horton contended he had to complete a road test in Green Bay, the credible testimony from Wisconsin Express's personnel worker was that Horton was not asked to take a road test in Green Bay. He had completed the road test in Mississippi. LIRC concluded that because Horton had accepted the offer of employment in Mississippi and not in Wisconsin, this state has no jurisdiction over his claim under § 102.03(5), STATS.

The circuit court concluded that successful completion of the DOT written examination was a condition precedent to the contract's formation, that Horton's contract of hire was made in Wisconsin when he passed the examination, and therefore this state has jurisdiction over his claim for worker's compensation benefits.

We review LIRC's decision rather than that of the circuit court. *West Bend Co. v. LIRC*, 149 Wis. 2d 110, 117, 438 N.W.2d 823, 827 (1989). Application of a controlling statute to undisputed and established facts is a question of law. *Braatz v. LIRC*, 174 Wis. 2d 286, 293, 496 N.W.2d 597, 600 (1993). The question remains how much weight we should accord to LIRC's decision to the extent the facts are undisputed and established.

Wisconsin courts have not interpreted what constitutes a "contract of hire made in this state" as set forth in § 102.03(5)(b), STATS. LIRC refers to no past decision by the agency interpreting the phrase. We infer that the case is one of first impression for LIRC as well as the courts, and that LIRC claims no special expertise in resolving the issue. The courts routinely deal with contract issues. As a result, we decide the meaning of the phrase with no deference to LIRC's decision. *Jicha v. DILHR*, 169 Wis. 2d 284, 290-91, 485 N.W.2d 256, 258-59 (1992).

However, we agree with LIRC that the phrase "contract of hire made in this state" in § 102.03(5)(b), STATS., requires that we look to the place where an employment offer has been accepted to determine the place where the contract was made. When a contract is made by telephone, it is made where the acceptor speaks. *State ex rel. Hartwig's Poultry Farm v. Bunde*, 44 Wis. 2d 229, 234, 170 N.W.2d 734, 736 (1969).

Horton was in Mississippi when he orally assented to Haddow's telephone offer. He not only orally assented to it but later manifested his assent by driving unit number 204 from Gulfport to Ohio and Wisconsin for the agreed upon rate of pay. It follows that his contract of hire was made in Mississippi.

Taking a different view, the circuit court concluded that the contract was made in Wisconsin. Citing RESTATEMENT OF CONTRACTS § 74 (1932),[2] it concluded that a contract is made at the time when the last act necessary for its formation is done, and at the place where the final act is done. RESTATEMENT (SECOND) OF CONTRACTS (1979) contains no exact counterpart to § 74 in the earlier Restatement. Section 50 of the RESTATEMENT (SECOND) of Contracts is the closest we have found to the earlier § 74. Section 50 distinguishes between an acceptance of an offer as a manifestation of assent to its terms and acceptance by a promise. RESTATEMENT (SECOND) OF CONTRACTS § 50 (1979).[3] Acceptance by a promise requires the offeree to complete every act essential to the making of the promise. *Id.* Acceptance by assent requires no more than assent. *Id.* The only inference possible from the facts before us is that Horton accepted Haddow's offer by manifesting his assent, not by making a return promise.

In any event, whether the last act necessary to form a contract occurred depends on the intentions of the parties. "The objective in interpreting and constru-

[2] RESTATEMENT OF CONTRACTS § 74 (1932) provides, "A contract is made at the time when the last act necessary for its formation is done, and at the place where that final act is done."

[3] RESTATEMENT (SECOND) OF CONTRACTS § 50 (1979) provides:

(1) Acceptance of an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer.

(2) Acceptance by performance requires that at least part of what the offer requests be performed or tendered and includes acceptance by a performance which operates as a return promise.

(3) Acceptance by a promise requires that the offeree complete every act essential to the making of the promise.

182

ing a contract is to ascertain the true intention of the parties." *Maas v. Ziegler*, 172 Wis. 2d 70, 79, 492 N.W.2d 621, 624 (1992). To suggest that Haddow intended Horton's passing an examination in Wisconsin as a condition to forming the employment contract means either that Horton drove without a contract from Mississippi to Ohio to Wisconsin, or that Horton had a contract for that run but it terminated when he arrived in Wisconsin and he then entered into a second contract. The first inference is unreasonable, since Horton drove Haddow's unit number 204 to Ohio and Wisconsin and was paid the agreed price. The alternative inference is unlikely, since Horton's passing the examination in Wisconsin did not alter the contract he had already made in Mississippi.

■ The most reasonable inferences are that, had Horton failed the examination in Wisconsin, his contract of employment would have been terminated, and having passed it his contract continued as before. These are the inferences that LIRC drew.[4] We must accept the reasonable factual inferences an agency has drawn from the established facts, even if other reasonable inferences may be drawn. *Vocational, Technical & Adult Educ., Dist. 13 v. DILHR*, 76 Wis. 2d 230, 240, 251 N.W.2d 41, 46 (1977).

Horton suggests, as did the circuit court, that it was unlawful under DOT regulations for Horton to drive Haddow's truck without passing DOT's examina-

---

[4] The dissent claims that LIRC did not draw such inferences. However, LIRC's memorandum opinion states: "The fact that the employer could reject the applicant if he failed to pass the Department of Transportation examination did not alter the fact that he had been previously hired over the telephone while he was in Mississippi."

tion in Wisconsin. It may be that Horton's first trip to Ohio and Wisconsin could subject Horton and Haddow (and perhaps Wisconsin Express) to civil or even criminal penalties. But that possible unlawfulness does not affect the fact that the offer of employment was accepted in Mississippi, and his contract of hire was therefore made in Mississippi.

■

We reverse the order of the circuit court and remand with directions to affirm LIRC's order dismissing Horton's application for worker's compensation for lack of jurisdiction.

*By the Court.*—Order reversed and remanded for further proceedings consistent with this opinion.

EICH, C.J. (*dissenting*). I agree with the majority opinion—and the trial court—that we review the commission's first-impression legal conclusion on the meaning of the statutory phrase "contract of hire made in this state" *de novo*. Unlike the majority, however, I would resolve that issue in the same manner as the trial court: that Horton had no permanent employment contract with Wisconsin Express until he came to Wisconsin and qualified under Wisconsin law to work for them as an over-the-road driver. And because that contract was necessarily "finalized" in Wisconsin when those qualifying conditions were met, I conclude, again like the trial court, that, once Horton so qualified, the contract for hire was made in Wisconsin within the meaning of § 102.03(5)(b), STATS. I would therefore affirm the trial court's order reversing the commission's decision.

The majority's conclusion is based on its acceptance of "factual inferences" drawn by the

184

commission—as it describes them, inferences that "had Horton failed the examination in Wisconsin, his contract of employment" made, according to the majority, in Mississippi "would have been terminated, and having passed it his contract continued as before." Majority op. at 183.

I find no such inference drawn in the findings of fact and order or in the commission's accompanying memorandum opinion. Indeed, the commission's "findings" on the subject, state only the general legal conclusion that Haddow "offered [Horton] the opportunity to drive the truck [to Green Bay]," and that "[a]fter negotiating the pay and reaching an agreement at 20 percent of the load, [Horton] accepted the offer." Horton drove to Green Bay where he took the Wisconsin Department of Transportation test and did the other things necessary for him to be employed as an over-the-road driver for Wisconsin Express.

Like the trial court, I find persuasive Horton's testimony that the sum and substance of his telephone conversations with Haddow and the Wisconsin Express dispatcher was that he was to drive to Wisconsin "where they were going to process [him] to be hired." According to Horton, his telephone conversations "settled up on the part of the money [he was to receive] but [he] had to come to Wisconsin before anything could be approved." He testified that if he did not pass the test he "would not get hired."

Whatever "contract" Horton may have had to drive the Wisconsin Express truck to Wisconsin to complete the hiring process, it was not, in my view, a contract of employment as a full-time driver for Wisconsin Express, for it is undisputed that passage of the Wisconsin DOT test is a precondition of employment as an over-the-road truck driver. At best, Wisconsin Express

may have assured Horton of employment upon passage of the test, but such an assurance does not a contract make. I would affirm.