IN-SINK-ERATOR, Division of Emerson Electric Company, Petitioner-Respondent,†

v.

DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS, Respondent,

Dan JOVANOVIC, Respondent-Appellant.

Court of Appeals

*No. 95–1468. Submitted on briefs January 11, 1996.—Decided March 6, 1996.*

(Also reported in 547 N.W.2d 792.)

†Petition to review denied.

On behalf of the respondent-appellant Dan Jova-novic, the cause was submitted on the briefs of *Jeffrey S. Hynes* and *Jon Deitrich* of *Adelman, Adelman & Murray, S.C.* of Milwaukee.

On behalf of the petitioner-respondent In-Sink-Erator, the cause was submitted on the brief of *Fred G. Groiss* of *Quarles & Brady* of Milwaukee.

Before Anderson, P.J., Brown and Snyder, JJ.

BROWN, J.   Dan Jovanovic filed a charge with the Department of Industry, Labor and Human Relations, Equal Rights Division (DILHR) alleging that In-Sink-Erator, his employer, violated the Wisconsin Family or Medical Leave Act (FMLA), § 103.10, STATS. In-Sink-Erator moved to dismiss the action as untimely, but after a fact-finding hearing, DIHLR's administrative law judge issued a decision on behalf of DIHLR determining that In-Sink-Erator had not posted the required notice about FMLA procedures in a conspicuous place where notices to employees are customarily posted such that Jovanovic could have reasonably known his time limit obligation. The trial court disagreed and ruled that the notice was adequate.

We hold that DIHLR's legal conclusion, that the notice was not in a conspicuous place where notices to employees are customarily posted, is so intertwined with the factual findings supporting the conclusion and with value and policy determinations that the trial court should have given DIHLR's decision weight. We reverse.

Findings of fact made by DILHR are conclusive if supported by credible and substantial evidence. *Jicha*

772

*v. DILHR,* 169 Wis. 2d 284, 290, 485 N.W.2d 256, 258 (1992). While In-Sink-Erator takes issue with certain findings of fact, we have examined the record and determine that the findings are based upon substantial and credible evidence. We recite the relevant law and facts as follows.

Section 103.10(14), STATS., requires that employers with at least fifty employees must "post, in one or more conspicuous places where notices to employes are customarily posted," a notice detailing employee rights under the act. WISCONSIN ADM. CODE § IND 86.05 provides that if an approved notice is not posted in one or more conspicuous places, an employee is deemed not to "reasonably have known" that a violation occurred. The statute is tolled until the employee obtains actual knowledge of the act.

During Jovanovic's employment, In-Sink-Erator maintained glass enclosed bulletin boards in each department in the plant area to inform employees of important employment information in each department. It also maintained two large, main bulletin boards containing employee information of interest to all employees in the plant. One of these main boards was located in the plant near the human resources department. The other main board was located in the plant at the northwest plant entrance. A third large bulletin board located in the plant was for pictures and entertainment or social notices. None of the plant area bulletin boards contained government posters describing an employee's legal rights under state and federal employment laws.

Beyond the plant area, In-Sink-Erator maintained a glass enclosed bulletin board in the southwest lobby area, just outside the human resources department. The bulletin board in the southwest lobby was the only

place that government notices describing rights under pertinent employment law were posted.

In-Sink-Erator maintained a large parking lot where plant employees usually parked. The quickest and most often used way to travel between the parking lot and plant work stations was by entering and exiting through the northwest plant entrance. Many office employees and some plant employees, on the other hand, found it more convenient to use the southwest lobby entrance. Even when conducting business with the human resources department, most plant employees used the northwest plant entrance, not the southwest lobby. Many plant employees rarely, if ever, spend time in the southwest lobby.

DILHR determined that In-Sink-Erator had not posted the required notice in a conspicuous place. DILHR reasoned in pertinent part:

> The evidence produced . . . demonstrates that many of the . . . plant employes would have little or no opportunity to view the legal notices posted in the southwest lobby. These employes generally enter and leave the plant premises by the northwest plant entrance, so they do not need to use the southwest lobby to enter or exit the work place. These employes also do not need to use the southwest lobby entrance to enter or exit the personnel office so this activity would also not provide them with the opportunity to see these posters. The normal work duties of many of the plant employees would also not require them to spend time in the southwest lobby. As a result, most plant employes would not see the government notices in the southwest lobby unless they were instructed to look for them in that location. [In-Sink-Erator] has never informed its employes that they must view any governmental notices of their legal rights under federal and state

employment laws in the southwest lobby. To the contrary, [In-Sink-Erator] has [led] its plant employees to believe that important employment information can be found on their department bulletin boards or the main bulletin boards in the plant.

. . . Plant employes simply had no reason to know that important notices regarding their legal rights were being posted in the southwest lobby area.

The trial court reversed. While it accepted the facts as found by DILHR to be conclusive, it reasoned that the major issue before it was statutory interpretation of the word "conspicuous" and review was therefore de novo. It construed the term "conspicuous" to mean a place where notices required by the government are "usually posted, which is accessible and which is used by all . . . employees." The trial court found that the facts met this legal standard. It noted that government-required notices had been placed on the southwest lobby bulletin board for "many years." Further, the board was accessible to all employees. Finally, although the trial court read DILHR's findings to say that the southwest lobby was used less by "some" employees than other locations, it nonetheless determined that "the southwest lobby area is the one location at the . . . facility that is used by all employees."

Our first query is whether the trial court made findings of fact inconsistent with DILHR's, even after concluding that DILHR's findings were conclusive. An argument could be made that it did. The trial court wrote that the southwest lobby was the one place used by all employees. That is not what DIHLR determined. DIHLR found that "most" *plant* employees did *not* use the southwest lobby. For instance, DILHR found that Jovanovic was only in the southwest lobby twice in the

nine years he worked for the company. And on both occasions, he was there for only a couple of minutes. If the trial court was writing that the facts showed all employees using the lobby on more than a seldom basis, the court was engaging in fact-finding—an exercise which it acknowledged in its opinion that it had no authority to do.

But we choose not to impute any fact-finding to the trial court. Instead, we read its opinion to say that it is not important whether employees actually used the area where the notice was maintained. Rather, the trial court appeared to rule that the sole inquiry is whether the employee had "accessibility" to that area. The trial court construed the DILHR opinion as saying that the statute requires the notice to be posted in the most "convenient" place to insure that the employee will be in a position to read the notice. However, the trial court interpreted the law to require only that the notice be in plain view on the premises, be accessible to employees and be there for such a period of time that the employee should know where the government notices are posted.

We are further satisfied that the trial court believed it is not the employer's burden to tell the employee where the government-required notices are posted. The employer need only put the notices in one nondeceptive place, keep them there and make the place accessible. It is the employee's burden to be "prudent." Using the trial court's own words, this means that it is the employee's "responsibility" to seek out the notice and "go and read/understand" it.

We disagree with the trial court's characterization of DIHLR's opinion. Contrary to the trial court, we do not read DILHR as having interpreted the statute to mean that if there are more prominent places available

776

where the majority of the plant workforce would have seen the notice more readily, then the employer must post the notices in these more prominent places. Rather, DIHLR's factual findings focused on whether the In-Sink-Erator employees had any reasonable knowledge about *where* the government notices were posted. For example, DILHR found that most employees do not have occasion to use the southwest lobby.

DILHR found, contrary to evidence from In-Sink-Erator, that the company *never* told the employees that the southwest bulletin board was the place where government notices are posted. It found that In-Sink-Erator "[led] its plant employees to believe" that important notices would be found on their department bulletin boards. And, by finding that the plant employees had no reason to know that the government notices were posted in the southwest lobby, it was implicitly finding that there was no unwritten plant custom from which an employee should know that government notices would be found in the southwest lobby.

These are important findings that cannot be ignored by the trial court, much less this court. We view DILHR as having construed the statute to mean that to be conspicuous in a place where customarily posted, there must be evidence that the employee *knew* or *should have known*, either by actual knowledge or by custom, that government notices are posted in a certain place.

█

In deciding how to construe the statute at hand, both parties agree that we are faced with a question of law, and therefore, our review is de novo. However, the parties disagree as to how much deference we should pay to DILHR. We conclude that *Jicha* is controlling. Our supreme court there held:

In sum, through its rulemaking process DILHR has gained experience and expertise concerning this statute. DILHR has also developed considerable specialized knowledge in administering similar employment discrimination laws. The application of that knowledge and expertise is entitled to deference in this case. We conclude that DILHR's decision in this case is entitled to great weight and should be affirmed if reasonable.

*Jicha*, 169 Wis. 2d at 292-93, 485 N.W.2d at 259. We see no reason not to apply *Jicha* to this case. Like this case, *Jicha* dealt with whether a complaint alleging a violation of the FMLA had been timely filed. *Id.* at 293, 485 N.W.2d at 259-60. While the precise issue in that case was different from this one because it concerned when a cause of action accrues, that difference is inconsequential to the supreme court's discussion of the proper deference to be paid to DILHR. The *Jicha* court pointed out that DILHR went through a rule-making process, carefully considered the FMLA and adopted administrative rules interpreting the statute. *Id.* at 292, 485 N.W.2d at 259. It further explained that although the FMLA is fairly new, DILHR has experience and expertise in administering and interpreting a closely analogous statute, the Wisconsin Fair Employment Act. *Id.* It determined that the general principles regarding the interpretation of the statutes of limitations in the two acts were substantially similar. *Id.*

We apply *Jicha* to this case. Thus, although our review is de novo, we will give weight to what we view is DILHR's understanding of the statute. This is especially so where DILHR made a value judgment to emphasize the facts surrounding the employees' lack of knowledge, by custom or otherwise, about where the government notices could be found. *See Kimberly-*

*Clark Corp. v. LIRC,* 138 Wis. 2d 58, 64, 405 N.W.2d 684, 687 (Ct. App. 1987) (when a determination by an administrative agency calls for a value judgment, the appellate court will give great weight where the expertise of the agency is significant to the value judgment).

The word "conspicuous" and the term "customarily posted" are important to how we construe the statute. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 485 (unabr. 1976) defines "conspicuous" as "obvious to the eye or mind: plainly visible . . . attracting or tending to attract attention by reason of size, brilliance, contrast, station." The word "customarily" means "by custom" or "in a customary manner." *Id.* at 559. "Customary" means "agreeing with custom: established by custom: commonly practiced, used, or observed: familiar through long use or acquaintance." *Id.*

From these definitions, it is apparent that the statute requires readily visible notice in a place where the *employee* could reasonably expect the notice to be placed. It requires the notice to at least be in a place where the employee would be familiar with it through long use or acquaintance. This is how DILHR obviously interpreted the statute. And, when intertwined with its factual findings regarding the lack of custom at In-Sink-Erator and the judgment that a plant employee could not reasonably expect to look for the government notices in the southwest lobby, we conclude that placement in the southwest lobby did not satisfy the statute.

The trial court asserted its belief that the DILHR decision requires "actual notice" by the employee. We disagree. The DILHR decision nowhere makes that claim. In another case, in another plant, the governmental notice board may well be out of the plant area and in a different building altogether. But if employees

know, either by plant custom or some other reasonable form of knowledge, that this is where the government notices are posted and are allowed access to it, then DILHR might well make a different value determination.

We are also concerned with the apparent belief that the DILHR interpretation means micromanaging the employer such that employers may feel the need to post the government notices in many places. We do not join in this lamentation. Again, the watchword is "reasonable" expectation of the employee. If by custom or familiarity most employees know or should know where the government notices are posted, a different result might well attain.

*By the Court.*—Order reversed.