BLACK RIVER COUNTRY BANK, Petitioner-Appellant,

v.

WISCONSIN COMMISSIONER OF BANKING, Respondent-Respondent.

Court of Appeals

*No. 95–1499. Submitted on briefs December 12, 1995.—Decided March 14, 1996.*

(Also reported in 548 N.W.2d 114.)

For the petitioner-appellant the cause was submitted on the briefs of *Richard A. Radcliffe* of *Mubarak & Radcliffe, S.C.* of Tomah.

For the respondent-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Peter C. Anderson*, assistant attorney general.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

DYKMAN, J.   Black River Country Bank appeals from an order affirming an order of the Wisconsin

65

Banking Review Board. The board affirmed an order of the Commissioner of Banking directing Black River to pay an appraiser's fee as part of the commissioner's approval of Black River's recapitalization plan. The issue is whether the commissioner has the authority to order Black River to pay an appraiser's fee as part of approving a reverse stock split.[1] We conclude that the commissioner has this authority and therefore affirm.

## BACKGROUND

The following facts are not in dispute. On July 27, 1993, about ninety-seven percent of Black River's shareholders approved a reverse stock split intended to consolidate Black River with its holding company. The split reduced the number of authorized shares from 18,000 shares of common stock with a par value of $10 to nine shares of common stock with a par value of $20,000. Black River asserted that the fair market value of the minority shares before the split was $85 per share.

To effectuate the reverse stock split, on July 29, Black River sought the commissioner's approval of a proposed amendment to its articles of incorporation pursuant to § 221.12, STATS.[2] The commissioner replied

---

[1] A reverse stock split is a reduction in the number of shares outstanding, effectuated by calling in all shares and issuing a smaller number. The capital of the entity remains the same. The effect is an increase in the value of each share. BLACK'S LAW DICTIONARY 1320 (6th ed. 1990).

[2] Section 221.12, STATS., provides in pertinent part:

> A bank may amend its articles of incorporation in any manner not inconsistent with law, at any time, by a vote of its stockholders representing two-thirds of the capital stock taken at a meeting called for that purpose. The bank shall submit the amendment to the commissioner of banking. The amendment is not effective unless approved by the commissioner. . . . No increase of the capital

that an appraisal of the value of the minority share-holders' stock must be conducted at Black River's expense pursuant to § 221.25, STATS.[3] This had been the commissioner's practice for the previous ten years.

The minority shareholders selected an appraiser who informed Black River that his fee would be $7,500. Black River refused to pay the $7,500 fee and on February 17, 1994, the commissioner ordered Black River to pay the fee in advance.

Black River appealed the commissioner's order to the Wisconsin Banking Review Board. The board conducted a hearing at which the commissioner's administrator of the banks division testified that until about ten years previously, the commissioner did not approve reverse stock splits and instead required a bank to go through an interim bank merger which triggered the protections for minority shareholders under

---

shall be valid until the amount of the increase has been subscribed and actually paid in. The entire surplus fund of a bank, or as much as may be required, may be declared and paid out as a stock dividend to apply on, and be converted into, an increase of capital. No reduction of capital shall be made to a less amount than is required under this chapter for capital, nor be valid or warrant the cancellation of stock certificates or diminish the personal liability of stockholders, until the reduction has been approved by the commissioner. . . . The approval may be given only when the commissioner is satisfied that the reduction of the capital is in the best interests of the depositors.

[3] Section 221.25, STATS., provides in pertinent part:

(1) Any 2 or more banks may, with the approval of the commissioner of banking, consolidate into one bank under the charter of either existing bank . . . . If . . . [a] shareholder dissents from the plan of consolidation as adopted and approved and desires to withdraw from such bank, the shareholder shall be entitled to receive in cash the value of the shares so held by the shareholder, to be ascertained by an appraisal made by a committee of 3 persons, one to be selected by the shareholders . . . the expense of such appraisal shall be borne by the bank . . . .

§ 221.25, STATS. He testified that when approving reverse stock splits over the last ten years, the commissioner did so with the condition that the minority shareholders' interests were protected under § 221.25.[4]

The board concluded that under § 221.12, STATS., the commissioner had discretion to approve or reject an amendment to a bank's articles of incorporation, and that the commissioner acted reasonably when it gave the minority shareholders the right to an independent appraisal under § 221.25, STATS., as a condition of approving Black River's proposed amendment. The board also noted that under § 227.11(2)(c), STATS., the commissioner may, but is not required to, promulgate rules requiring banks to comply with § 221.25 when effecting a reverse stock split. The board also concluded that the $7,500 appraisal fee was reasonable because it fell within the range of fees identified by expert witnesses. However, the board concluded that it was unreasonable to require Black River to pay the fee in advance.

Black River sought judicial review pursuant to ch. 227, STATS., and the trial court affirmed. Black River appeals.

## STANDARD OF REVIEW

We apply three levels of deference to an agency's interpretation of a statute. *Jicha v. DILHR*, 169 Wis. 2d 284, 290, 485 N.W.2d 256, 258 (1992). The first level of review is the "great weight" standard which we apply

---

[4] Between 1984 and the date of the hearing, the commissioner approved eighteen reverse stock splits with the condition that minority shareholders' rights be protected under § 221.25, STATS.

when the agency's experience, technical competence, and specialized knowledge aid the agency in its interpretation and application of the statute. *Id.* at 290-91, 485 N.W.2d at 258-59. The second level is the "due weight" or "great bearing" standard which we apply if the decision is very nearly one of first impression. *Id.* at 291, 485 N.W.2d at 259. The lowest level of review is the *de novo* standard which we apply if the case is one of first impression for the agency and the agency lacks special expertise or experience in determining the question presented. *Id.* When deference is appropriate, we will affirm the agency's interpretation if it is reasonable even though another interpretation would be equally reasonable. *Carrion Corp. v. DOR*, 179 Wis. 2d 254, 265, 507 N.W.2d 356, 359 (Ct. App. 1993).

The commissioner has, for at least the last ten years, interpreted §§ 221.12 and 221.25, STATS., as allowing it to protect minority shareholders when approving amendments to articles of incorporation for reverse stock splits. In all eighteen cases between 1984 and 1994 involving reverse stock splits, the commissioner has required that the minority shareholder provisions of § 221.25 apply. This is a longstanding and consistent agency interpretation of §§ 221.12 and 221.25. Thus, we will give the commissioner's interpretation "great weight" and affirm that interpretation if it is reasonable.

## DISCUSSION

Black River rejects the commissioner's interpretation of §§ 221.12 and 221.25, STATS., and argues that the commissioner lacks the authority to impose an appraisal fee when approving or rejecting an amendment to effectuate a reverse stock split. Black River asserts that its amendment is consistent with the por-

tions of § 221.12 regulating reductions in capital, and it promotes the depositors' best interests by strengthening corporate control of Black River. It claims that nothing in § 221.12 or any other state banking law permits the commissioner to promote the interests of the minority shareholders over the depositors. Black River also argues that § 221.25 is unambiguous and regulates bank consolidations and mergers only and not the internal corporate matters of a single bank.

Section 221.12, STATS., contemplates the commissioner's exercise of discretion in deciding whether to approve an amendment. A plain reading of the statutes reveals that the legislature intended to permit the commissioner to protect the interests of minority shareholders by conditioning a reverse stock split on compliance with § 221.25, STATS. If the commissioner has the power to reject a reverse stock split under § 221.12, surely the commissioner may impose reasonable conditions on approval of the split. Protecting minority shareholders through the provisions in § 221.25 is reasonable and can be fairly implied by the legislative scheme. Indeed, before 1984, a bank attempting to effect a reverse stock split had to proceed through an interim merger, which, under § 221.25(1), requires the appointment of appraisers whose fees are paid by the bank.

Black River also argues that the commissioner lacks the authority to regulate the payment of an appraisal fee. The commissioner ordered Black River to pay the appraiser's $7,500 fee in advance. The board affirmed that part of the order directing Black River to pay $7,500, but ordered that the payment did not have to be paid in advance.

Section 221.25, STATS., requires a bank to pay the fee of an appraiser selected by the minority shareholders. The authority to impose a reasonable fee is implicit in an ability to require a Bank to pay this fee as a condition of approval. The board concluded that the $7,500 fee was reasonable and Black River has not demonstrated that this conclusion is unsupported by substantial evidence. Accordingly, we affirm.

*By the Court.*—Order affirmed.