Janice E. SIEGER, Petitioner-Appellant,

v.

WISCONSIN PERSONNEL COMMISSION, Respondent-Respondent,

DEPARTMENT OF HEALTH & SOCIAL SERVICES, Respondent.

Court of Appeals

*No. 93–1713. Oral argument December 8, 1993.—Decided January 11, 1994.*

(Also reported in 512 N.W.2d 220.)

850

For the petitioner-appellant there were briefs and oral argument by *Christine R. H. Olsen* of *Byrne, Goyke, Olsen & Tillisch, S.C.* of Wausau.

For the respondent-respondent the cause was submitted on the brief of *James E. Doyle*, attorney general and *Stephen M. Sobota*, assistant attorney general. There was oral argument by *Stephen M. Sobota*.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J. Janice Sieger appeals a trial court judgment affirming the Wisconsin Personnel Commission's (WPC) decision concluding that the Department of Health and Social Services (DHSS) did not violate the Wisconsin Family Medical Leave Act (FMLA), § 103.10, STATS., when it refused to allow Sieger to take medical leave in October 1989. Sieger contends that the WPC erred by concluding that (1) Sieger had not requested medical leave within the meaning of FMLA, (2) Sieger had not established at the time she requested medical leave that her serious health condition rendered her unable to perform her work and that the leave was "medically necessary" and (3) Sieger failed to meet her burden of proof at the hearing on her complaint that DHSS violated FMLA by denying her leave and retaliating against her.

Sieger argues that FMLA applies to her because she met the requirements of § 103.10(6)(b), STATS. Sieger further argues that the WPC erroneously placed on Sieger the burden of proving at the time she requested medical leave that the leave was "medically necessary" because her condition rendered her unable

to perform her work. Sieger asserts that DHSS was required to request certification under § 103.10(7) if it needed more information about the nature of the requested leave. Finally, Sieger argues that she was prevented from offering her treating physician's testimony concerning the medical necessity of her leave because the hearing examiner failed to rule on the issue whether medical testimony is required to establish medical necessity. We conclude that Sieger properly requested medical leave under FMLA. We also conclude that FMLA does not require employes to establish, at the time medical leave is requested, that the employe has a serious health condition that renders the employe unable to perform the employe's work duties and that the leave is medically necessary. The employe, however, does have the burden of proving these facts at the hearing where the employe alleges a violation of FMLA. Because the real controversies at Sieger's hearing, whether Sieger's serious health condition rendered her unable to perform her work duties and whether Sieger's leave was medically necessary, were not tried, we reverse the judgment and remand the matter to WPC for a new hearing.

## FACTS

Sieger had been employed with DHSS since April 1984. In January 1989, Sieger began receiving psychiatric care for depression under Dr. Mary Berg. Sieger was hospitalized in February 1989 for depression. Her coworkers and supervisors were aware of Sieger's hospitalization and that it was for treatment of her depression.

In August 1989, several of Sieger's coworkers approached section chief Murray Katcher and bureau director Ivan Imm with concerns about Sieger's health

and her ability to perform her work duties. Shortly thereafter, Katcher and Imm met with Sieger expressing concern and urging Sieger to seek immediate care from Berg.

On October 10, 1989, Berg gave Sieger a written prescription advising Sieger to take a one-week leave of absence. The note stated, "I am recommending a one-week leave of absence for Janice Sieger." The note did not indicate the dates of the recommended leave or the medical reason for the recommendation. The next day, Sieger brought Berg's written prescription to her immediate supervisor, Anita Grand. Sieger told Grand about Sieger's medical problems, and that Sieger desired to commence the leave on October 17. Grand expressed her concern about Sieger's health, and questioned whether one week would be sufficient. Grand then forwarded Sieger's request for leave and Berg's note to Thomas Conway, Katcher's executive assistant.

On October 13, Conway met with Sieger and Grand, and indicated his belief that this use of sick leave appeared appropriate. However, Conway stated that he desired more information from Berg and requested that Sieger allow Berg to talk to him. Conway did not request Sieger to present a written statement that Sieger has a serious health condition, its probable duration and when it started or the extent to which it rendered Sieger unable to perform her work duties. Conway did not request Sieger submit to an examination or obtain a second opinion. Berg refused to speak with Conway concerning the leave she recommended for Sieger. Sieger informed Grand of Berg's refusal to speak with Conway, whereupon Grand told Sieger that Grand would speak to Conway, but advised Sieger to wait until Conway approved before taking her leave.

Conway failed to approve or disapprove Sieger's leave prior to October 17. Sieger nonetheless commenced her leave on that date. The next day, Sieger received a letter from Conway stating that Sieger was considered absent without authorization. Conway's letter also stated that the only reason leave was denied was because Berg refused to talk to him. Sieger was ultimately suspended for one day as discipline for taking an unauthorized leave.

The day Sieger returned to work after her leave, Conway and Imm summoned her to a meeting and informed her that her position would be reduced to 70%, in conjunction with cuts in funding. Sieger sustained a net loss of hours and pay as a result of these cuts.

Subsequently, Sieger filed a complaint with WPC alleging that DHSS denied Sieger her right to medical leave under FMLA and retaliated and discriminated against her because she filed a grievance concerning the denial of leave and discipline for taking the leave. WPC held hearings on Sieger's complaint on eight days over a four-month period. WPC determined that DHSS did not wrongfully deny Sieger medical leave or retaliate or discriminate against Sieger. WPC determined that at the time she requested medical leave, Sieger had not adequately demonstrated that the leave was medically necessary and that her serious health conditions rendered her unable to perform her work duties during the requested leave time. WPC also determined that Sieger failed to prove that DHSS retaliated against her in any way because she grieved the denial of her leave and her discipline for taking unauthorized leave.

Sieger appealed WPC's decision to the trial court. The trial court affirmed WPC's decision, concluding

that Sieger was required to prove she had a serious health condition prior to her taking medical leave despite the fact that DHSS did not request certification.

## STANDARD OF REVIEW

Where the facts are contested, the agency's findings of fact are conclusive unless the reviewing court determines that the findings are not supported by substantial evidence in the record. Section 227.57(6), STATS. Our supreme court discussed the appropriate standards of review of an agency's legal conclusions and statutory interpretation in *Jicha v. DIHLR*, 169 Wis. 2d 284, 290-91, 485 N.W.2d 256, 258-59 (1992):

> This court has generally applied three levels of deference to conclusions of law and statutory interpretation in agency decisions. First, if the administrative agency's experience, technical competence, and specialized knowledge aid the agency in its interpretation and application of the statute, the agency determination is entitled to "great weight." The second level of review provides that if the agency decision is "very nearly" one of first impression it is entitled to "due weight" or "great bearing." The lowest level of review, the *de novo* standard, is applied where it is clear from the lack of agency precedent that the case is one of first impression for the agency and the agency lacks special expertise or experience in determining the question presented. (Emphasis in original; citations omitted.)

Sieger contends, and the trial court concluded, that the lowest level of review is appropriate because

the record demonstrates that the issue was one of first impression for the WPC and its hearing examiner. WPC contends, however, that its interpretation and application of FMLA is entitled to great weight because § 103.10(12)(a)1, STATS., charges the WPC with administering and applying FMLA. However, under *Jicha*, this fact alone is insufficient to warrant giving great weight to WPC's interpretation and application of FMLA. Instead, there must be evidence that the agency actually has developed expertise in administering the statute. *Jicha*, 169 Wis. 2d at 291, 485 N.W.2d at 259.

Here, the hearing examiner stated her uncertainty about FMLA several times and reversed herself concerning the applications of FMLA at least twice. This demonstrates WPC's lack of familiarity with FMLA. The state makes no showing that WPC has expertise with FMLA, other than to state that WPC is the agency charged with its administration. As recently as 1992, we have held that we review WPC's interpretations of FMLA de novo because there is no evidence of special expertise through regular and repeated interpretations of FMLA. *Butzlaff v. WPC*, 166 Wis. 2d 1028, 1031-32, 480 N.W.2d 559, 560 (Ct. App. 1992). Because there is no evidence that WPC has gained special expertise through regular and repeated interpretations of FMLA since our decision in *Butzlaff*, we conclude that we review WPC's interpretation of FMLA de novo.

## FMLA REQUIREMENTS AS TO WHAT SHOWINGS EMPLOYES MUST MAKE AT THE TIME THEY REQUEST MEDICAL LEAVE

Sieger contends that the WPC erred by concluding that FMLA required her, at the time she requested medical leave, to demonstrate that she (1) had a serious health condition (2) that rendered her unable to perform her work duties during October 17 to 23, 1989, and (3) that a leave from October 17 to 23 was medically necessary. WPC argues that the enabling portion of FMLA, § 103.10(4)(c), STATS., required Sieger to make those showings at the time she requested her leave.

Section 103.10(4)(c), STATS., provides in part, "[A]n employe who has a serious health condition which makes the employe unable to perform his or her employment duties may take medical leave for the period during which he or she is unable to perform those duties. An employe may schedule medical leave as medically necessary." WPC misconstrues the function of this provision. Section 103.10(4)(c) is the portion of FMLA that creates the employe right to take medical leave under certain conditions. As such, § 103.10(4)(c) states the burden of proof that is placed upon the employe at the hearing on the employe's claim that the employer refused to allow the employe medical leave in violation of FMLA. Section 103.10(4)(c) does not address the employe's responsibilities under FMLA when requesting medical leave.

In *Jicha v. DIHLR*, 164 Wis. 2d 94, 100, 473 N.W.2d 578, 580 (Ct. App. 1991), *aff'd*, 169 Wis. 2d 284, 485 N.W.2d 256 (1992), we rejected the argument that FMLA requires the employe to give the employer detailed information about the employe's medical condition, holding that "FMLA . . . does not require that the employee utter magic words or make a formal

857

application to invoke FMLA's protections." Thus, Jicha's attorney advising Jicha's employer that Jicha's wife was filing a petition for Jicha's commitment for mental illness, that there would be a hearing on the petition and that Jicha would have to undergo an evaluation for mental illness was sufficient to invoke FMLA. *Id.* Based on the language of § 103.10(4)(c), STATS., and the holding in *Jicha*, we conclude that the request for leave need only be reasonably calculated to advise the employer that the employe is requesting medical leave under FMLA and the reason for the request.

Here, WPC found that DHSS knew of Sieger's serious health condition and that her health condition was affecting her ability to perform her duties. WPC conceded at oral argument that both Conway and Grand knew that Sieger was requesting medical leave, and that Grand knew that Sieger was requesting medical leave from October 17 to 23. We therefore conclude that Sieger's request for leave was reasonably calculated to advise DHSS that she was requesting medical leave under FMLA because of her serious health condition.

WPC's interpretation of the responsibilities FMLA places on employes at the time they request sick leave would render the certification provisions in § 103.10(7), STATS., superfluous. Section 103.10(7) provides in part,

> If an employe requests . . . medical leave the employer may require the employe to provide certification . . . by the health care provider . . .
>
> (b) . . . stating:
>
> 1. That the . . . employe has a serious health condition.

858

2. The date the serious health condition commenced and its probable duration.

3. Within the knowledge of the health care provider . . . the medical facts regarding the serious health condition.

4. If the employe requests medical leave, an explanation of the extent to which the employe is unable to perform his or her employment duties.

Requiring the employe to demonstrate, at the time medical leave is requested, that the employe (1) has a serious health condition (2) that renders the employe unable to perform the employe's work duties during a specific time period and (3) that a leave during that time period is medically necessary, removes the responsibility placed on employers by § 103.10(7), STATS., to request certification of these facts if the employer desires more information. The plain language of § 103.10(7) demonstrates the legislature's intent to place the burden on employers to determine, at the time an employe requests sick leave, whether the employe (1) has a serious health condition (2) that renders the employe unable to perform the employe's work duties and (3) that a leave is medically necessary. Essentially, FMLA affords employers with three choices of action when an employe requests medical leave: (1) Approve the leave, (2) disapprove the leave or (3) request more information through the certification process in § 103.10(7).

FMLA also requires the employe to reasonably accommodate the employer's needs when scheduling planned medical leave under § 103.10(6)(b), STATS. This issue is not in dispute here. Sieger presented Berg's

859

note advising Sieger to take a leave of absence to Grand the day after Sieger received it, four working days before she intended to commence her leave. Conway testified that the timing of Sieger's leave was not "unduly disruptive," and WPC conceded at oral argument that Grand knew the dates of Sieger's intended leave several days prior to its commencement. We therefore conclude that Sieger met all of her responsibilities under FMLA in requesting her planned medical leave.

## BURDEN OF PROOF FMLA PLACES UPON EMPLOYES AT HEARING ON EMPLOYE'S ALLEGATIONS THAT EMPLOYER VIOLATED FMLA

Our conclusion that Sieger met all of her responsibilities under FMLA in requesting her planned medical leave, however, does not end our inquiry. We must next determine whether Sieger met her burden of proving that DHSS violated FMLA by refusing to grant her requested medical leave.

Section 103.10(11)(a), STATS., creates a cause of action against employers who violate FMLA by wrongfully denying medical leave. Therefore, to successfully assert that an employer wrongfully denied the employe medical leave, the employe must prove that the employe was entitled to medical leave under FMLA.

As we previously stated, § 103.10(4)(c), STATS., defines the circumstances that entitle an employe to take medical leave under FMLA. Section § 103.10(4)(c) provides in part, "[A]n employe who has a serious health condition which makes the employe unable to perform his or her employment duties may take medi-

cal leave for the period during which he or she is unable to perform those duties. An employe may schedule medical leave as medically necessary." In addition, where the requested medical leave was planned, the employe must prove that the employe met the requirements of § 103.10(6)(b) at the time the employe requested the leave. In sum, to successfully assert that an employer wrongfully denied the employe medical leave, the employe must prove that (1) the employe had a serious health condition (2) that rendered the employe unable to perform the employe's work duties during the requested leave, (3) that the leave was medically necessary and (4) that the employe requested the planned medical leave in a reasonable manner.

At oral argument, WPC argued that Sieger failed to prove at the hearing that her serious health condition rendered her unable to perform her work duties from October 17 to 23 and that a leave during that time period was medically necessary. Citing *Cramer v. Theda Clark Mem'l Hosp.*, 45 Wis. 2d 147, 172 N.W.2d 427 (1969), and *West Bend Co. v. LIRC*, 149 Wis. 2d 110, 438 N.W.2d 823 (1989), WPC contends that the questions whether Sieger's serious health condition rendered her unable to perform her work duties and whether her leave was medically necessary required expert testimony. Because Sieger failed to call Berg, her treating physician, or any other certified expert to testify concerning the matters, WPC argues that she failed to meet her burden of proof as a matter of law.

Our supreme court held in *West Bend* that "[a] lay person cannot be allowed to make a diagnosis or prognosis of a particular person's present or future condition when to the lay person there are no outward or overt manifestations of present or future disabilities

that would be apparent in the general experience of mankind." *Id.* at 129, 438 N.W.2d at 832. Applying the supreme court's analysis to the questions at bar leads us to conclude that no medical expert testimony was required to establish that Sieger's serious health condition interfered with her ability to perform her work duties because there existed outward or overt manifestations of that fact that were easily recognizable by lay persons. Medical expert testimony was necessary, however, to establish that Sieger's leave was medically necessary because Sieger's serious health condition did not manifest symptoms that lay people would recognize as necessitating a leave. Sieger's attending college courses and taking a college exam during her leave cast further ambiguity on the question whether her leave was medically necessary.

Here, Sieger presented ample evidence concerning her serious health condition and the effect it had on her ability to perform her work duties. Several coworkers, as well as her supervisors, Grand and Conway, testified that they believed that Sieger was unable to perform her work duties because of her serious health condition. This testimony remains uncontroverted. Sieger failed to call Berg or another medical expert to offer testimony concerning whether her leave was medically necessary. Sieger argues, however, that her failure to call Berg or another medical expert concerning this issue was due in part to the hearing examiner reserving a ruling on the question whether medical expert testimony on the issue was necessary and then failing to ever make a ruling.

■■■

Sections 227.57(4) and (5), STATS., require this court to set aside the agency's decision and remand the matter to the agency for further action "if it finds that

either the fairness of the proceedings or the correctness of the action has been impaired by a material error in procedure" or "if it finds that the agency has erroneously interpreted a provision of law and a correct interpretation compels a particular action." We conclude that the existence of each of these grounds in this case compels us to reverse the judgment and remand the matter to WPC for further action under a correct interpretation of FMLA.

The record contains no evidence concerning the medical necessity of Sieger's requested leave. This failure of evidence is attributable to errors by Sieger's counsel and the hearing examiner. Sieger's counsel apparently misunderstood the burden of proof, the factors required to be proved and what evidence was necessary to prove those factors. The hearing examiner, when asked to determine whether expert medical testimony from the treating physician was necessary to establish that the leave was medically necessary, reserved her ruling on the issue and then never again addressed the issue. Additionally, the hearing examiner's mistaken conclusion that FMLA required Sieger to make certain prima facie showings beyond a reasonable request for leave at the time she requested leave blurred the issues of what Sieger had to demonstrate at the time she requested leave and what she had to prove at the hearing. Thus, we conclude that errors by Sieger's counsel and the hearing examiner contributed to the failure of proof by both sides on a significant legal issue, whether Sieger's leave was medically necessary.

Berg's testimony is required to resolve the issue whether Sieger's leave was medically necessary. While ample evidence existed to demonstrate that lay persons recognized that Sieger's symptoms were interfering with her ability to perform her work duties,

no evidence exists to demonstrate that lay persons were capable of concluding from those symptoms that a leave was medically necessary. Indeed, we can find no evidence in the record that directly relates to the issue of whether Sieger's leave was medically necessary. Without this evidence, the broader issue of whether DHSS violated FMLA by denying Sieger's requested leave and disciplining her for taking that leave cannot be resolved. We conclude that counsel and the hearing examiner share the responsibility for the failure to obtain this essential testimony.

Moreover, the record is replete with instances of misunderstanding, errors and ambiguities concerning FMLA and the requirements it places upon persons alleging a violation of FMLA attributable to counsel and the hearing examiner. For example, the issue whether expert medical testimony was required to prove that Sieger's leave was medically necessary was discussed but never resolved:

> [SIEGER'S COUNSEL]: . . . I would like the opportunity to call Dr. Berg. But I've not wanted to do so because I don't think that the physician patient privilege should be waived. I don't think it is a matter of putting the doctor into these proceedings but I have to admit we are dealing with a pretty new law.

> EXAMINER: Right. And we are still struggling with this law, including the Commission. . . . I am not sure who is supposed to make that judgement [that an employe has a serious health condition that renders the employe unable to perform his or her employment duties]. Whether it is supposed to be the Commission, the physician, the employing agency, or who?
> 
> . . . .

EXAMINER: My problem is not knowing who is supposed to make this decision in 103.10(4) as to what renders an employe unable to perform his or her employment duties. . . .

. . . .

[SIEGER'S COUNSEL]: Well, if there is any possibility that the Commission might make that determination itself as an issue, then I'd like to request the opportunity to call Dr. Berg to testify that there was a serious medical condition. And that the leave was necessary.

. . . .

EXAMINER: I am very uneasy making a ruling on this particular point. I am wondering if we should go ahead and I can reserve ruling on this, make an offer of proof and perhaps have some time to think about it and or reserve testimony in this issue until we have a chance to think about it.

Another issue that was discussed but never definitively resolved was the extent to which one of Sieger's coworkers, Dr. Aronson, could testify concerning Sieger's symptoms, the effect her symptoms had on her ability to perform her work duties and whether he considered Sieger's leave to be medically necessary:

[SIEGER'S COUNSEL]: In your clinical judgement, Dr. Aronson, did you think that . . . in view of [Sieger's] emotional state, would it have been advisable for her to come back to work on Monday morning and continue on with her immediate duties?

[ARONSON]: No.

[DHSS' COUNSEL]: Objection. This witness has only been identified as a medical doctor, working in [Sieger's] unit and there has been no evidence put

forward to his credentials to have expertise or expe-
rience in the psychiatric area. . . . [T]he questions
sounded to me as if he was being called upon as an
expert. . . .

[SIEGER'S COUNSEL]: Mr. Conway, who is not a
doctor, decided that the leave for Jan Sieger was not
medically necessary and these circumstances seems
appropriate since there is a physician on the staff to
. . . ask questions of him concerning Jan's symp-
toms. . . .

. . . .

[SIEGER'S COUNSEL]: [W]e have a coworker
who's got some expertise in medicine who says I was
[Sieger's] coworker and I saw reasons for concern.
And it looked to me like she was a person who
should not be at work. . . . And I don't see why we
can't offer this coworkers's opinion as a doctor, his
clinical impressions of her.

. . . .

EXAMINER: Well, I tend to agree with Respon-
dent in this matter and I do think maybe there
should be some foundation. Maybe he has had some
training in this regard but generally, to qualify as
an expert in these types of proceedings and not
being the treating physician for this particular
request that [Sieger] made under [FMLA], I think
we do have to have some more information concern-
ing this individual. He can certainly make . . . some
statements about what knowledge he has about any
symptoms which she was exhibiting . . . but I think
we should know more about his general background
to see what weight we should give to any testimony
he has regarding his judgement.

We conclude that these numerous misunderstand-
ings and ambiguities necessitate reversing the

judgment under secs. 227.57(4) and (5), STATS. We therefore reverse the judgment and remand the matter for a new hearing, consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded.