WAL-MART STORES, INC., Plaintiff-Appellant,

v.

LABOR AND INDUSTRY REVIEW COMMISSION, Defendant-Respondent,

James R. SCHNEIDER, Interested Party-Respondent.†

Court of Appeals

*No. 99–2632. Submitted on briefs May 19, 2000.—Decided November 22, 2000.*

## 2000 WI App 272

(Also reported in 621 N.W.2d 633.)

†Petition to review denied.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Susan R. Maisa* and *Michael Mishlove* of *Foley & Lardner*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *David C. Rice,* assistant attorney general, and *James E. Doyle,* attorney general.

On behalf of the interested party-respondent, the cause was submitted on the brief of *Dean R. Dietrich* and *Julie M. Falk* of *Ruder, Ware & Michler, S.C.,* Wausau.

A nonparty brief was filed by *Thomas P. Krukowski, Timothy G. Costello,* and *Mark A. Johnson* of *Krukowski & Costello, S.C.,* Greenfield, for Wisconsin Manufacturers & Commerce.

Before Vergeront, Roggensack and Deininger, JJ.

¶ 1. DEININGER, J. Wal-Mart Stores, Inc., appeals an order which affirmed a determination by the Labor and Industry Review Commission that Wal-Mart had discriminated against James Schneider by terminating his employment because of his disability.[1] Wal-Mart claims the commission erred in several of its findings and conclusions, but we address only one of the claimed errors inasmuch as it is dispositive. We agree with Wal-Mart that, because there was no expert testimony establishing that the behavior for which Schneider was fired was caused by his mental illness, the commission erred in finding that Wal-Mart terminated his employment because of his disability. Accordingly, we reverse the circuit order affirming the commission's determination, and we instruct the court to enter an order remanding the matter to the commission for further proceedings consistent with this opinion.

---

[1] During the course of administrative proceedings in this case, the legislature revised the pertinent statutes to replace the obsolete term "handicap" with the term "disability." *See* 1997 Wis. Act 112. Although some documents in the record refer to Schneider's "handicap," we will employ the current term throughout this opinion.

## BACKGROUND

¶ 2.     Schneider was employed by Wal-Mart as a tire and lubrication technician, and his principal duties consisted of draining oil and changing oil filters on customers' automobiles. He suffers from a form of mental illness known as obsessive-compulsive disorder (OCD). This anxiety disorder is caused by a chemical imbalance, which affects the way the brain influences a person's thoughts, feelings and actions. A pamphlet introduced as an exhibit at the hearing on Schneider's discrimination complaint explains that OCD sufferers have "recurring and unwanted thoughts or images that the person knows are excessive or unreasonable but cannot stop," such as a fear of contamination by dirt or germs, fear of harming themselves or others, or a preoccupation with having a serious illness such as cancer.[2] These obsessive thoughts then lead to "repetitive behaviors or mental acts that consume at least one hour each day," such as excessive hand washing, repeatedly checking items such as locked doors, or arranging items in a certain way.

¶ 3.     Schneider was receiving treatment for his OCD in the form of medications and psychotherapy. About three months before he was fired, Wal-Mart granted him an extended leave to allow him to undergo a change in his medications. He then returned to work, at first part-time, progressing to full-time over a four-week period. Soon after his return to work, Schneider's

---

[2] The pamphlet introduced as an exhibit is entitled "Understanding the Inner Workings of Obsessive-Compulsive Disorder (OCD)." Its author or publisher cannot be readily determined from the copy in the record. Schneider testified that he had received the pamphlet "from the Marshfield Clinic," and that it "explain[s] the different steps and how it [OCD] affects some people one way and some people another way."

supervisor announced to the automobile service technicians that another employee was being promoted to the position of "bay manager." The commission found that the following then ensued:

> Schneider immediately became upset and voiced his opposition to the promotion saying, among other things, that it was unfair and that [the other employee] was unqualified. [The supervisor] told Schneider two or three times to be quiet, and at one point to shut up, and that they could discuss it one on one later. Schneider responded by saying he was going to quit and then asking if he could go home for the day because he was sick. [The supervisor] told Schneider that he could leave for the day.

After obtaining written statements from the employees present, and discussions among "upper management," Wal-Mart terminated Schneider's employment, citing his "insubordination" on the day in question.

¶ 4. Before his leave of absence, Schneider had discussed with his supervisor the possibility of his being promoted to the position of bay manager, and he was counseled on areas in which he could improve in order to enhance his opportunity for promotion. Schneider believed that it was "all but certain" that he would get the promotion, and he committed himself to hard work and improvement to that end. He testified:

> The way I was talked to and the times that I was talked to, again, I was led to believe that this position was going to be mine. And after a while, the OCD just takes over. It just—it consumed me for weeks and months, that I couldn't wait to get this position, just as it would consume me for weeks at a time of not going out of my apartment, not opening my drapes, and that type of thing.

214

He also testified that problems with "anger control" were a part of his OCD, and that some of the medication that he was taking at the time "was to help relieve those feelings."

¶ 5. The deposition of Schneider's therapist, Betty Cameron, was made a part of the record in the administrative proceedings. She is a registered nurse "with a degree in nursing and an undergrad degree with a minor in psychiatry, and . . . a master's degree in marriage and family therapy." Her experience included "many years as a psychiatric nurse on inpatient psychiatry in Waukesha and Shorewood, Wisconsin, and also at De Paul in Milwaukee, which is an alcoholic recovery hospital, which also had certain dual diagnosis patients with obsessive-compulsive disorders." She testified that she felt "very confident in assessing for that diagnosis."

¶ 6. Cameron testified that she had spoken on several occasions with Schneider's supervisor regarding Schneider's need for a leave and the phased transition back to work following his medication change. She recalled telling the supervisor that Schneider's former medication "was not holding him" and that he was thus "highly reactive," meaning that he was "quick to anger." She also testified that "anger is so much a part of the predominant symptom when the medications are not appropriate," and that the gradual transition back to work was recommended so that Schneider would not "lose his temper or kind of sabotage himself." According to Cameron, Schneider's supervisor came across as being very understanding and amenable to both the leave and the transition, saying at one point that "he would do anything in his power to help" Schneider.

¶ 7. The administrative law judge (ALJ) who heard Schneider's complaint concluded that the record established that Wal-Mart had discriminated against Schneider because of his disability when it fired him following the incident described above. He ordered Wal-Mart to reinstate Schneider and to pay his back wages, costs and attorney fees. Wal-Mart appealed to the commission, which, with minor modifications, adopted the ALJ's findings and conclusions as its own. Wal-Mart then petitioned the circuit court for review, and the court affirmed the commission's determination. Wal-Mart renews its claims of error in this court.

## ANALYSIS

¶ 8. We independently review the commission's determination, not the decision of the circuit court. *Barnes v. DNR*, 178 Wis. 2d 290, 302, 506 N.W.2d 155 (Ct. App. 1993), *aff'd*, 184 Wis. 2d 645, 516 N.W.2d 730 (1994). The scope of our review depends, initially, on whether the agency determination under review is its finding of a fact or its interpretation of law. WIS. STAT. § 227.57(3), (5) and (6) (1997–98).[3]

¶ 9. Wal-Mart concedes that Schneider has a disability within the meaning of Wisconsin's fair employment law. *See* WIS. STAT. § 111.32(8). In order to prevail on his discrimination claim, however, Schneider must also show that Wal-Mart terminated his employment because of his disability. *See Target Stores v. LIRC*, 217 Wis. 2d 1, 9, 576 N.W.2d 545 (Ct. App. 1998). In this regard, the commission concluded as follows: "It is undisputed that [Schneider] was discharged

---

[3] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

because of his outburst at a staff meeting. If [Schneider] established that the outburst was caused by his disability, then his termination must be considered, in legal effect, to have been because of his disability." Wal-Mart argues both that Schneider failed to establish the causal link between his disability and the "outburst" which led to his dismissal, and that, even if cause had been established, a firing for misconduct cannot be deemed, "in legal effect," to be an action taken "because of his disability." We agree with Wal-Mart's first argument, which challenges the sufficiency of the evidence before the commission.

¶ 10. Our review of an agency's factual finding is highly deferential:

> If the agency's action depends on any fact found by the agency in a contested case proceeding, the court shall not substitute its judgment for that of the agency as to the weight of the evidence on any disputed finding of fact. *The court shall, however, set aside agency action or remand the case to the agency if it finds that the agency's action depends on any finding of fact that is not supported by substantial evidence in the record.*

WIS. STAT. § 227.57(6) (emphasis added). "Substantial evidence" is that quantum of relevant evidence as a reasonable mind might accept as adequate to support a conclusion, and we will only set aside an agency's decision where, "upon an examination of the entire record, the evidence, including the inferences therefrom, is found to be such that a reasonable person, acting reasonably, could not have reached the decision from the evidence and its inferences." *Target Stores*, 217 Wis. 2d at 11 (citation omitted).

¶ 11. Wal-Mart's challenge to the sufficiency of the evidence rests on two premises: (1) that expert testimony is required to prove the causal link between Schneider's disability and his conduct; and (2) that there is none in the record doing so. As to the first proposition, we note that whether expert testimony is necessary in a given situation is a question of law, which we decide without deference to a trial court's opinion on the matter. *Grace v. Grace*, 195 Wis. 2d 153, 159, 536 N.W.2d 109 (Ct. App. 1995). Whether we should defer to an administrative decision maker on the question of the need for expert testimony on a factual issue in dispute before it, and if so, to what degree, are perhaps more difficult questions.

¶ 12. The commission did not directly rule on whether expert testimony was needed to establish that Schneider's OCD caused him to react vociferously to the announcement that a fellow employee, and not he, would be promoted. The commission gave the following explanation of its finding that Schneider had established the requisite causation:

> The commission believes that the complainant has satisfied his burden in this regard. [Schneider] established that he suffers from OCD, and that people with OCD are plagued by obsessive thoughts. The record also established that [Schneider] was obsessively focused on the idea of obtaining the bay manager position—[Schneider] testified that he had been consumed for "weeks and months" with the position, and this is well borne out by the record. In addition to the fact that [Schneider]'s OCD resulted in obsessive thoughts, [his] therapist indicated that [his] condition made it difficult for him to control his anger and that, at the time of the events which resulted in his discharge, she was in the process of trying to adjust his medication to help him

achieve better anger management. Under these circumstances, the commission is satisfied that [Schneider]'s actions in becoming profoundly upset and acting out at a meeting in which he learned that someone else had been selected for the bay manager position were attributable to his OCD . . . .

¶ 13.   It is not clear from the foregoing whether the commission deemed expert testimony unnecessary on the question of causation, or if it considered the pamphlet describing OCD which Schneider introduced into evidence, together with the testimony of his therapist, sufficient expert evidence on the issue. Because the commission did not directly address the question, our consideration of whether expert testimony is required to link Schneider's "outburst" with his OCD is, of necessity, de novo.

¶ 14.   Even if the commission had ruled on the matter, however, we would conclude that de novo review is appropriate. The question appears to be one of first impression, and it addresses the necessary quantum of proof required to establish a medical/psychiatric fact. Thus, it is a question that is at best tangential to the commission's legislative charter to administer certain employment-related statutes, and it lies outside of the commission's acknowledged expertise in employment discrimination matters. We conclude that a reviewing court is as competent as the commission to decide the legal question of whether expert testimony is required to establish a causal link between a psychiatric disorder and certain behavior. *See Jicha v. DILHR*, 169 Wis. 2d 284, 290–91, 485 N.W.2d 256 (1992) ("[T]he de novo standard is applied where it is clear from the lack of agency precedent that the case is one of first impression for the agency and

the agency lacks special expertise or experience in determining the question presented.") (citations omitted).

¶ 15. The commission's failure to directly address whether expert testimony was necessary to establish causation is understandable. Wal-Mart did not make its present arguments regarding the need for expert testimony during the review proceedings before the commission. The commission thus asks us to declare the issue waived. *See, e.g., Lange v. LIRC*, 215 Wis. 2d 561, 572, 573 N.W.2d 856 (Ct. App. 1997). For several reasons, however, we choose not to do so. First, the waiver rule is one of administration, not jurisdiction, and it is a general rule to which there are exceptions. *Wirth v. Ehly*, 93 Wis. 2d 433, 443–44, 287 N.W.2d 140 (1980). Second, as we have noted, the necessity for expert testimony to establish a given fact presents a question of law, and the parties have fully briefed the issue, both here and in the circuit court.[4] *See id.* Finally, we conclude that "the question presented is of sufficient public interest to merit a decision," *see State v. Gaulke*, 177 Wis. 2d 789, 794, 503 N.W.2d 330 (Ct. App. 1993), and it is one that is likely to recur. *See Waukesha County v. Pewaukee Marina, Inc.*, 187 Wis. 2d 18, 22, 522 N.W.2d 536 (Ct. App. 1994).[5]

---

[4] The circuit court concluded that "[n]o specific expert testimony was required," but that, in any event, "Cameron's testimony as a therapist with specific expertise as a psychiatric nurse was expert testimony," which "assisted the Commission in making its determination."

[5] We also note that challenges to the sufficiency of evidence are not as susceptible to waiver arguments as are other claims of error. *See, e.g.*, WIS. STAT. § 805.17(4) (challenges to the suffi-

¶ 16. We thus turn to a consideration of whether Schneider needed to present expert testimony to establish that his vociferous reaction to the announcement that another employee was being promoted to the position of bay manager was caused by his OCD. We conclude that expert testimony was a prerequisite for this finding. The supreme court has explained that there is a distinction "between matters of common knowledge and those needing expert testimony to explain." *Cramer v. Theda Clark Mem'l Hosp.*, 45 Wis.

---

ciency of the evidence to support a trial court's findings "may be raised on appeal whether or not the party raising the question has objected in the trial court to such findings."). As we have noted, Wal-Mart's first challenge is essentially that there was insufficient evidence to support the commission's finding that it fired Schneider because of his disability, because he did not present expert testimony that his outburst was caused by his OCD. In its petition for review to the commission, Wal-Mart asserted that "[t]here is no evidence" that its firing of Schneider on account of his outburst was a "pretext for discrimination," and that, at the time of the incident, Schneider was no longer disabled "because his alleged disability was under control through the use of medication." Thus, while it did not specifically cite the lack of expert evidence, Wal-Mart did alert the commission to what it believed to be an insufficient record on which to base a determination that it had fired Schneider because of his disability. Finally, we note that, in some instances, specific challenges to an agency's findings can be raised for the first time on appeal. *Cf. Goranson v. DILHR*, 94 Wis. 2d 537, 546, 289 N.W.2d 270 (1980) (Where a hearing examiner's findings are challenged before an administrative agency, but are adopted by the agency unmodified, "[i]f these findings are inadequate or contrary to law, the applicant cannot be deemed to have waived the defects by failing to point out the error to the agency.").

2d 147, 150, 172 N.W.2d 427 (1969). "[E]xpert testimony should be adduced concerning matters involving special knowledge or skill or experience on subjects which are not within the realm of the ordinary experience of mankind, and which require special learning, study, or experience." *Id.* (citations omitted). In situations where the factual question of causation is "so complex or technical" that a lay fact finder "without the assistance of expert testimony would be speculating," the absence of expert testimony "constitutes an insufficiency of proof." *Id.* at 152. We conclude that that is precisely the circumstance regarding the question before us.

¶ 17. The pamphlet introduced by Schneider states that "OCD is a complex and baffling medical illness," and that "[d]uring the past decade, scientific research has made enormous progress in understanding the biochemical features of OCD, and doctors and other mental health professionals are now able to diagnose and treat the illness." Schneider himself testified that OCD "is a very much misunderstood disease still at this date and time." We agree. There is nothing in the record from which we might conclude that the symptoms and manifestations of OCD are "within the realm of the ordinary experience of mankind." *See Cramer*, 45 Wis. 2d at 150. We thus conclude that the question of whether Schneider's OCD caused him to react angrily and vociferously to the news that he had been passed over for promotion, and thereby to commit the alleged insubordination for which he was fired, is sufficiently "complex or technical" that a lay fact finder "without the assistance of expert testimony would be speculating" on the matter.[6] *See id.* at 152.

---

[6] Expert testimony may not be a necessity in every case involving a claim that certain behavior or misconduct is caused

¶ 18. We acknowledge that the commission is not necessarily a "lay fact finder" in the same sense that a trial judge or a jury is. The legislature has designated the commission as the final administrative arbiter of work-related claims, including discrimination claims. *See* WIS. STAT. § 103.04. Consequently, as we have noted, owing to its authority and expertise in employment-related matters, our review of the commission's factual findings is highly deferential, requiring that we uphold a finding unless "a reasonable person, acting reasonably, could not have reached the decision from the evidence and its inferences." *Target Stores,* 217 Wis. 2d at 11.

¶ 19. We are not persuaded, however, that we must defer to an inference by the commission that clearly lies outside its area of expertise. Whether a causal link exists between Schneider's disability and the conduct which triggered his firing is a question of medical/scientific fact, not one of employment policies or practices. Thus, we conclude that, on the issue at hand, the commission stands in no better position than a judge or jury, and that if the commission made its finding on causation, "without the assistance of expert testimony" to support that finding, the commission "would be speculating." *See Cramer,* 45 Wis. 2d at 152; *see also Sieger v. Wisconsin Pers. Comm'n,* 181 Wis. 2d 845, 862, 512 N.W.2d 220 (Ct. App. 1994) (concluding that "medical expert testimony" was necessary in proceedings before the Personnel Commission under the

---

by a disability. The causal linkage between certain behaviors and some disabilities may well be "within the realm of the ordinary experience of mankind," such as the consumption of alcoholic beverages by one who suffers from alcoholism. *See, e.g.,* WIS. STAT. § 51.45(1); *State ex rel. Jacobus v. State,* 208 Wis. 2d 39, 48–52, 559 N.W.2d 900 (1997).

Family Medical Leave Act in order "to establish that . . . leave was medically necessary because [the employee]'s serious health condition did not manifest symptoms that lay people would recognize as necessitating a leave").[7]

¶ 20. We must next consider, therefore, whether there is expert testimony in the present record to support the commission's conclusion that Schneider's OCD caused his outburst. It appears from the previously quoted passage from its decision that the commission relied on three things to conclude that causation was established: (1) Schneider's own testimony that he was "obsessed" with attaining the bay manager's position; (2) the pamphlet describing OCD; and (3) therapist Cameron's deposition testimony. Even though he suffers from the disease, Schneider is not an "expert" on OCD for the present purposes, in that there is no indication in the record that he possesses "scientific, technical, or other specialized knowledge" by way of "experience, training, or education" that would qualify him to give an expert opinion on whether a certain behavior was caused by his OCD. *See* WIS. STAT.

---

[7] Our conclusion that expert testimony is required to causally link Schneider's disability with his misconduct also finds support in a Personnel Commission decision, *Bell-Merz v. University of Wisconsin*, No. 90–0138–PC–ER (Wis. Personnel Commission, March 19, 1993), which the commission cites in its present decision. The Personnel Commission found that the complainant had established that some of her absences from work were related to her depression, but for many others, "there was no medical opinion whether the depression was causal." Thus, although the Personnel Commission was willing to equate a firing for misconduct to a firing because of the underlying disability, it apparently deemed expert opinion necessary to establish the causal link between the conduct and the disability.

§ 907.02; *see also Connecticut Gen. Life Ins. Co. v. DILHR*, 86 Wis. 2d 393, 406–08, 273 N.W.2d 206 (1979) (concluding that testimony of complainant insufficient to establish that he was handicapped by alcoholism "without competent evidence of a medical diagnosis"). The OCD pamphlet in the record, as we have noted, comments that "doctors and other mental health professionals" are now able to diagnose and treat the "complex and baffling" illness of OCD. The commission must therefore look to these professionals, and not to their patient, for the necessary expertise to testify on the question of causation.[8]

¶ 21.   We will assume for present purposes that the OCD pamphlet introduced by Schneider constitutes "expert testimony" regarding the nature and manifestations of OCD. (See footnotes 2 and 8.) The pamphlet obviously provides no direct evidence that Schneider's outburst on the day in question was caused by his OCD, nor does it provide any evidence from which that conclusion might be inferred. If anything, the pamphlet undermines Schneider's contention regarding causation. The OCD-related behaviors cited in the pamphlet involve repetitive performance of routine acts, such as hand washing, the touching or arranging of objects, locking of doors, or hoarding use-

---

[8] We acknowledge that the commission is not "bound by common law or statutory rules of evidence." WIS. STAT. § 227.45(1). The question, however, is not whether Schneider should have been permitted to offer his opinion as to what caused his outburst at the employee meeting, but whether his lay opinion on the matter is sufficient to sustain his burden of proof on the issue of causation. Notwithstanding a relaxation of the formal rules of evidence, "[b]asic principles of relevancy, materiality and probative force shall govern the proof of all questions of fact" in agency proceedings. *Id.*

less items. There is no mention of anger-control problems, or of a tendency to engage in vociferous outbursts in response to unwelcome news.

¶ 22.  Similarly, the pamphlet describes "typical OCD obsessions" as "recurring and unwanted thoughts or images that the person knows are excessive or unreasonable but cannot stop." Examples cited include the fear of dirt, germs, or diseases; an irrational preoccupation with illnesses; and the fear of committing "sinful acts." By contrast, the pamphlet notes that certain normal or desirable personality traits are often said to be "obsessive," such as the desire to lose weight, and that some forms of obsessive thinking or compulsive actions, such as "perfectionism" and "conscientiousness," may be evidence of an "obsessive-compulsive personality" rather than OCD. In short, nothing in the pamphlet supports a claim that a preoccupation with getting ahead in one's job, or an emotional outburst when that goal is thwarted, represent "typical" manifestations of OCD.

¶ 23.  That leaves the testimony of therapist Cameron, whose credentials as a registered nurse specializing in psychiatric care we have described. Wal-Mart suggests that she was not qualified to give testimony on whether OCD caused Schneider's outburst. We need not address the issue of Cameron's qualifications to give such testimony, however, because she did not do so. Like the pamphlet, therapist Cameron provided no direct evidence that Schneider's outburst at the staff meeting was caused by his OCD. Quite simply, she was never asked whether, in her professional opinion, Schneider's behavior on the day in question, as described by other witnesses or their statements, was caused by, or likely to have been caused by, Schneider's OCD. Cameron also gave no testimony corroborating

Schneider's claim that he was obsessed with attaining a promotion, or more importantly, that a preoccupation with being promoted was in any way related to his OCD.

¶ 24.   Most of Cameron's testimony was transactional, relating to communications she had had with Schneider's supervisor regarding his leave from and return to work. She testified that she was on vacation at the time of Schneider's firing, that another therapist was covering her "more difficult clients," and that she did not "personally call anybody at Wal-Mart to talk about the incident." The commission, however, relied on Cameron's testimony that Schneider's difficulty in controlling his anger was one of the reasons he had undergone a change in medications prior to the incident which led to his firing. We conclude that this testimony (which we have summarized in the Background section of this opinion) is insufficient to serve as a proxy for direct, expert testimony linking the behavior in question to Schneider's OCD.[9]

¶ 25.   In summary, we conclude that expert testimony was required to establish that the conduct which formed the basis for Wal-Mart's action in terminating Schneider's employment was caused by his disability, and that the record lacks such expert testimony. We

---

[9] Schneider, who filed a separate response brief, points to a letter from an Equal Rights Division investigator to Cameron which asked her, "[i]n layperson's terms, what is the [disability]?" Cameron wrote in response, "[s]evere Obsessive Compulsive Disorder with extreme difficulty with anger management." We agree with Wal-Mart, however, that the document in question was not introduced into evidence at the hearing on Schneider's claim, and thus it was not before the ALJ or the commission.

thus conclude that the commission's determination is not supported by substantial evidence. A "reasonable person, acting reasonably, could not have reached the decision from the evidence" before the commission, *see Target Stores*, 217 Wis. 2d at 11 (citation omitted), because the causal link between OCD and Schneider's behavior is "not within the realm of the ordinary experience of mankind." *See Cramer*, 45 Wis. 2d at 150. Inferring the required causal link from the evidence in the present record, without expert testimony on the issue, is speculation, not the drawing of a reasonable inference to which we must defer. *See id.* at 152.

¶ 26.  As we have noted, whether expert testimony is required to establish a causal link between Schneider's disability and the conduct for which he was fired is a question of first impression, and it is one that Wal-Mart did not explicitly raise in proceedings before the commission. WISCONSIN STAT. § 227.57(6) provides that we are to "set aside agency action or remand the case to the agency if [we] find[ ] that the agency's action depends on any finding of fact that is not supported by substantial evidence in the record." We conclude, given the circumstances noted, that we should remand the case to the commission, which may conduct additional evidentiary proceedings if it deems appropriate.[10]

---

[10] We also note that our conclusion may be viewed as a determination that the commission committed an error of law by allowing Schneider's claim in the absence of expert testimony to support causation. A remand to the commission is thus also appropriate under WIS. STAT. § 227.57(5) ("The court shall set aside or modify the agency action if it finds that the agency has erroneously interpreted a provision of law and a correct interpretation compels a particular action, or it shall remand the case to the agency for further action under a correct interpretation of the provision of law.").

¶ 27. Finally, we note again that Wal-Mart also argues that, even if a causal link were established, a firing for misconduct cannot be deemed, "in legal effect," to be an action taken "because of his disability." *See, e.g., Palmer v. Circuit Court*, 117 F.3d 351, 352 (7th Cir. 1997). The Wisconsin Manufacturers & Commerce (WMC) also argues in its amicus brief that "[a]n employer who discharges an employee because of conduct does not discharge the employee because of a disability—even if the disability caused the conduct that caused the discharge."[11] *Cf. Squires v. LIRC*, 97 Wis. 2d 648, 653, 294 N.W.2d 48 (Ct. App. 1980). As with the evidentiary issue, it does not appear that Wal-Mart raised this issue in proceedings before the commission. The commission did not discuss it in its decision, other than to state its conclusion that if Schneider "established that the outburst was caused by his disability, then his termination must be considered, in legal effect, to have been because of his disability." In support, the commission cited its decision in *Crivello v. Target Stores*, ERD No. 9252123 (LIRC, August 14, 1996), and two Personnel Commission decisions, *Bell-Merz v. University of Wisconsin*, No. 90–0138–PC–ER (Wis. Personnel Commission, March 19, 1983) and *Conley v. DHSS*, No. 84–0067–PC–ER (Wis. Personnel Commission, June 29, 1987). In its *Crivello* decision, the commission also did not discuss the issue, but simply cited the two Personnel Commission decisions for the proposition.[12]

---

[11] The WMC did not address in its brief whether expert testimony is necessary to establish that Schneider's OCD caused his misconduct.

[12] The commission argues that, although this court did not "expressly address" the issue, we "implicitly endorsed" the commission's conclusion that a firing for sleeping on the job was a

¶ 28. The Personnel Commission noted in *Bell-Merz* that there was no dispute that the complainant suffered from depression and was "perceived as an alcoholic" by a UW-Whitewater personnel official, and that she was thus "clearly" a "handicapped individual." It then declared, without further discussion, that a firing for misconduct equates to a firing because of the underlying causal disability. The question of whether a firing for misconduct caused by a disability equates, as a matter of law, to a firing because of disability, is of some importance, and it involves significant policy implications. We therefore invite the commission on remand to expand on the rationale for its adoption of the Personnel Commission's interpretation, which is the subject of some disagreement among federal courts. *Compare Palmer v. Circuit Court*, 117 F.3d 351 (7th Cir. 1997), *with Teahan v. Metro-North Commuter R.R. Co.*, 951 F.2d 511 (2d Cir. 1991). In revisiting this issue, the commission may wish to receive evidence in order to provide a complete record on the issue.

firing because of the complainant's handicap in *Crivello*. We disagree with this characterization. We noted in our opinion that "Target does not challenge LIRC's conclusion that Crivello was discharged for sporadically dozing off on the job, that this dozing off was a direct result of her sleep apnea, and that her termination therefore was based on her handicap." *Target Stores v. LIRC*, 217 Wis. 2d 1, 10, 576 N.W.2d 545 (Ct. App. 1998). Our failure to address an issue because it is not contested on appeal does not constitute an "endorsement" of the commission's conclusion regarding the matter. We simply did not take up the issue because there was no reason to do so in the appeal under consideration.

## CONCLUSION

¶ 29. For the reasons discussed above, we reverse the circuit court's order and direct that, on remand, an order be entered remanding the matter to the commission for further proceedings consistent with this opinion.[13]

*By the Court.*—Order reversed and cause remanded with directions.

¶ 30. VERGERONT, J. *(dissenting).* I disagree with the analysis and conclusion of the majority opinion. Whether the conduct that led to Schneider's dismissal was caused by his obsessive-compulsive disorder (OCD) is a question of fact. I conclude that Cameron is qualified to testify as an expert both on whether Schneider has OCD and on the symptoms he manifests that are caused by OCD. Cameron testified that Schneider has OCD, and, as the majority states, Wal-Mart concedes that Schneider has a disability within the meaning of the statute. Cameron also testified:

> A. ... I remember telling [Schneider's supervisor] that [Schneider] was in crisis from the standpoint that his medication was, was not holding him, that

---

[13] Because we conclude that there was insufficient evidence to support the commission's finding that Schneider's outburst was caused by his OCD, we do not address the several other issues Wal-Mart raises: whether a firing for misconduct caused by a disability equates to discrimination on the basis of the disability; whether Schneider's disability was reasonably related to his ability to adequately perform his job-related responsibilities; and whether Wal-Mart refused to reasonably accommodate Schneider's OCD.

as part of his disorder, being the obsessive-compulsive disorder, that he was highly reactive. And anger is so much a part of the predominant symptom when the medications are not appropriate to address the symptoms. So we were in the process of getting him on different medications and trying to alleviate the high reactiveness of Jim Schneider.

Q. Did you talk with [Schneider's supervisor] about the obsessive-compulsive disorder and explain it to him?

A. I don't remember exactly how much in depth I went with him, but I remember telling [him] something to the effect that [Schneider] is highly affective. He doesn't like being that way; it is part of his disorder. And that's the part we're addressing in therapy but therapy is not sufficient for him. He is one of those clients that needs medication as well.

¶ 31. Given our deferential standard of review of the factual findings of the commission, I conclude that Cameron's deposition testimony is sufficient for a reasonable person acting reasonably to decide that being highly reactive and quick to anger are symptoms of Schneider's OCD. I conclude that testimony, together with Schneider's testimony, is sufficient to permit a reasonable person acting reasonably to decide that his "outburst" at the meeting was caused by his OCD. I agree with the majority that Schneider's testimony alone is not sufficient to establish that his conduct at the meeting was caused by his OCD. However, I do not agree it is necessary for Cameron or some other expert to specifically opine that Schneider's conduct at the meeting was caused by his OCD in order for the commission to make that finding. Therefore, I respectfully dissent. Were I writing for the majority, I would affirm the commission's finding that the behavior for which

Schneider was fired was caused by his OCD, and proceed to decide the other issues Wal-Mart raises on appeal. Because I am writing in dissent, I confine my comments to the issue decided in the majority opinion.